# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                    Plaintiff,        :        Case No. 3:07-cr-173

                                            District Judge Walter Herbert Rice

-  vs  -                       Magistrate Judge Michael R. Merz

ANTHONY BALTIMORE,

                    Defendant.        :

---

# REPORT AND RECOMMENDATIONS

---

This criminal case is before the Court on Defendant Anthony Baltimore's Motion to Vacate, Set Aside, or Correct a Sentence, pursuant to 28 U.S.C. § 2255 (Doc. No. 292).

After appointment of counsel (Notation Order granting ECF No. 294), Mr. Baltimore filed an Amended § 2255 Motion (ECF No. 299). On the Court's Order for Answer (ECF No. 293), the Government filed a Response (ECF No. 301) and Defendant filed a Reply (ECF No. 302). After discovery, the Court granted Defendant's Motion for Evidentiary Hearing (ECF Nos. 310, 312, 313). That hearing was held on September 22-23, 2015, and completed on October 22, 2015 (See Minute Entries for those dates). After transcripts of the hearing were filed (ECF Nos. 324, 328), the parties filed post-hearing Briefs (ECF Nos. 329, 333). The case is therefore ripe for decision.[1]

---

[1] Actually, the case has been ripe for nearly a year, for which the Magistrate Judge apologizes. In September 2015 just before this case was heard, the Magistrate Judge was assigned to *In re: Ohio Injection Protocol Litig.*, Case No.

**Procedural History**

Defendant Anthony Baltimore was indicted by the grand jury for this District on October 24, 2007, and charged with conspiracy to distribute and to possess with intent to distribute cocaine in excess of five kilograms, heroin, and marijuana (Count 1); money laundering (Count 2); and possession of a firearm during a drug offense (Count 3)(Indictment, ECF No. 4). The grand jury later added charges of money laundering (Count 4) and being engaged in a continuing criminal enterprise (Count 5)(Superseding Indictments, ECF No. 49, 61).

Mr. Baltimore was first represented by Assistant Federal Public Defender Cheryll Bennett (ECF Nos. 11, 13). The Federal Defender's Office withdrew because of a possible conflict of interest and Criminal Justice Act ("CJA") panel attorney Aaron Durden was appointed (ECF Nos. 22, 29). Mr. Baltimore asked the Court to replace Mr. Durden after he had been on the case about six months (ECF No. 45). After Judge Rice denied that request, Mr. Baltimore sought to act as his own co-counsel (ECF No. 53). At Mr. Durden's request, Judge Rice appointed CJA panel attorney Vincent Popp as co-counsel (ECF No. 80), but within a week both Messrs. Durden and Popp moved to withdraw because Mr. Baltimore had refused to meet with them on January 27, 2009 (ECF Nos. 81, 82). Judge Rice granted those requests and appointed CJA panel attorney Phillip Lehmkuhl as counsel on February 18, 2009 (ECF No. 84).

By August 2009 Mr. Baltimore had also become dissatisfied with Mr. Lehmkuhl and sought his replacement, accusing him of unethically failing to devote sufficient time to the case (ECF No. 115).[2] Mr. Lehmkuhl filed a lengthy Response documenting the number of hours he had already spent on the case and projecting total focus on this case for twelve weeks before and

---

2:11-cv-1016, in anticipation of the impending retirement of District Judge Gregory L. Frost. Since then there have been 441 filings in that case.

[2] Baltimore had previously filed an ethics complaint against Mr. Durden as well.

during trial (ECF No. 117).  After Judge Rice denied Mr. Baltimore's request, Baltimore asked for reconsideration, stating his relationship with Mr. Lehmkuhl had deteriorated further (ECF No. 118).  After an in-court hearing, Judge Rice again denied a replacement (ECF No. 121).  On September 22, 2009, Baltimore again complained that Lehmkuhl had lied to him and said he was filing a grievance with the Bar Association (ECF No. 131).

Trial of this case commenced November 4, 2009 (Minute Entry, ECF No. 105).  On November 24, 2009, the jury returned verdicts finding Mr. Baltimore guilty on Count 1 (drug conspiracy, including a Special Verdict finding more than five kilograms of cocaine involved), Count 3 (firearm possession), Count 4 (money laundering conspiracy), and Count 5 (continuing criminal enterprise involving 150 kilograms of cocaine or more), and not guilty on Count 2 (money laundering)(ECF No. 223).  On February 26, 2010, Judge Rice sentenced Mr. Baltimore to mandatory life imprisonment plus sixty months on the weapons charge with concurrent sentences o n Counts 1 and 4 (ECF No. 236).

Baltimore appealed (ECF No. 239).  On the Government's concession of the point, the Sixth Circuit vacated the conviction on Count 1 on double jeopardy grounds because it was a lesser included offense of the continuing criminal enterprise conviction.  *United States v. Baltimore*, Case No. 10-3305, 482 Fed. Appx 977, 2012 U.S. App. LEXIS 13078 (6th Cir. 2012)(copy at ECF No. 277).  This action did not affect the life sentence.  *Id.*  The United States Supreme Court denied certiorari.  *Baltimore v. United States*, Case No. 12-7203, 133 S. Ct. 1582, 185 L. Ed. 2d 584 (2013).  The instant Motion to Vacate followed a year later on March 13, 2014 (ECF No. 292) and was amended September 2, 2014 (ECF No. 299).

In the Amended Motion, Mr. Baltimore, with the assistance of appointed counsel, pleads six Grounds for Relief

**First Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BECAUSE WAS CONVICTED AND SENTENCED TO A MANDATORY LIFE SENTENCE UNDER COUNT 5 OF THE INDICTMENT FOR VIOLATING THE CONTINUING CRIMINAL ENTERPRISE STATUTE, 21 U.S.C. §§ 848(a), (b)(1), and (b)(2)(A), WITHOUT THE JURY OR THE COURT DETERMINING THAT HE WAS "THE PRINCIPAL ADMINISTRATOR, ORGANIZER, OR LEADER OF THE ENTERPRISE" UNDER § 848(b)(1).

**Second Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR REASONS INCLUDING BUT NOT LIMITED TO FAILING TO OBJECT TO THE JURY INSTRUCTIONS RELATED TO COUNT 5 ON THE GROUND THAT THEY DID NOT INCLUDE APPROPRIATE INSTRUCTIONS CONCERNING § 848(b)(1) AND FAILING TO OBJECT TO THE COURT'S SENTENCE OF MANDATORY LIFE IN PRISON ON COUNT 5 EVEN THOUGH THE COURT FAILED TO MAKE A DETERMINATION THAT THE GOVERNMENT HAD PROVEN THE REQUISITES OF § 848(b)(1) BY A PREPONDERANCE OF THE EVIDENCE.

**Third Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR REASONS INCLUDING BUT NOT LIMITED TO ERRONEOUSLY ENCOURAGING MR.

BALTIMORE TO REJECT A FAVORABLE PLEA OFFER AND PROCEED TO TRIAL BY CLAIMING THAT THE CASE WAS WINNABLE AND THAT HE HAD AN EXCELLENT CHANCE OF PREVAILING AT TRIAL AND BY WRONGLY INFORMING MR. BALTIMORE THAT BOTH OF THE EVIDENTIARY REQUIREMENTS SET FORTH IN 21 U.S.C. § 848(b) ARE ELEMENTS OF THE CCE OFFENSE IN COUNT 5 THAT HAVE TO BE DECIDED BY A JURY BEYOND A REASONABLE DOUBT.

**Fourth Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BECAUSE HE FAILED TO MOVE THE COURT UNDER RULES 12(b) OR 29 TO STRIKE OVERT ACT 12 OF COUNT 4 AND OVERT ACT 21 OF COUNT 1 (INCORPORATED INTO COUNT 5) OR OTHERWISE FAILED TO REQUEST THAT THE COURT DISMISS COUNTS 4 AND 5 ON THE GROUND THAT ONCE THESE OVERT ACTS WERE PROPERLY EXCLUDED, THE GOVERNMENT WAS BARRED FROM PROCEEDING ON COUNTS 4 AND 5 OF THE INDICTMENT BY THE FIVE-YEAR STATUTE OF LIMITATIONS, AND THEY WERE VIOLATED BY APPELLATE COUNSEL BECAUSE HE, TOO, FAILED TO CHALLENGE THESE OVERT ACTS AND THE CORRESPONDING COUNTS OF THE INDICTMENT ON STATUTE OF LIMITATIONS GROUNDS.

**Fifth Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BECAUSE THE JURY WAS INSTRUCTED AS PART OF THE ESSENTIAL ELEMENTS OF THE FIREARM OFFENSE (COUNT 3) THAT IT COULD FIND MR. BALTIMORE GUILTY IN THREE DIFFERENT WAYS, BUT

TWO OF THE THREE WAYS--AS A PRINCIPAL OR UNDER A THEORY OF PINKERTON LIABILITY—WERE ERRONEOUS, AND THE VERDICT FORM FOR COUNT 3 DID NOT REQUIRE THE JURY TO SPECIFY THE BASIS FOR CONVICTION, MEANING THAT THE JURY LIKELY CONVICTED MR. BALTIMORE ON THE BASIS OF THE ERRONEOUS PORTIONS OF THE JURY INSTRUCTION.

**Sixth Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BECAUSE HE FAILED TO OBJECT TO THE ERRONEOUS PORTIONS OF THE JURY INSTRUCTION ADDRESSING THE ESSENTIAL ELEMENTS OF COUNT 3.

(Amended Motion, ECF No. 299.)

## Standard for Relief under 28 U.S.C. § 2255

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair

procedure.  *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(per curiam).  Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack."  *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991).

Persons convicted of federal crimes have a right to appeal to the appropriate circuit court of appeals and to seek review in the United States Supreme Court, both of which Mr. Baltimore did.  Considering the efficiency of having all issues dealt with in one proceeding, the federal courts have encouraged use of direct review to the fullest possible extent.  Yackle, POSTCONVICTION REMEDIES, §108 (1981).  A motion to vacate under § 2255 is not a substitute for direct appeal.  *United States v. Duhart*, 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).  Absent manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th, §41.7(e)(2011), *citing Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States*, 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981), *citing Mars v. United States*, 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States*,  11 F.3d 583  (6th Cir. 1993).

It is well-established that a § 2255 motion "is not a substitute for a direct appeal."  *Ray v. United States*, 721 F.3d 758, 761(6th Cir. 2013), *quoting Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (*citing United States v. Frady*, 456 U.S. 152, 167-68 (1982)).

Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime. *Ray*, *supra*, *citing Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

On the other hand, an ineffective assistance of counsel claim should be brought in a § 2255 motion, rather than on direct appeal. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006). Procedural default doctrine does not bar the 2255 motion even if the issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999).

# Analysis

## Ground One: Failure to Submit an Element to the Jury

In his First Ground for Relief, Mr. Baltimore asserts his conviction and mandatory life sentence on the continuing criminal enterprise count (Count 5) are unconstitutional because neither the jury nor the Court expressly determined that he was "the principal administrator, organizer, or leader of the enterprise."

"[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven

beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *quoting Jones v. United States*, 526 U.S. 227 (1999).  *Apprendi* was the first in a series of cases distinguishing between elements and sentence enhancement factors.  Eventually the Supreme Court held any fact that makes a defendant eligible for the mandatory minimum sentence for an offense is an "element" which must be submitted to the jury.  *Alleyne v. United States*. 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), overruling *Harris v. United States*, 536 U.S. 545 (2002). *Alleyne* was decided June 17, 2013, almost a year after the Sixth Circuit affirmed Mr. Baltimore's conviction on Count 5.

Mr. Baltimore concedes that the Sixth Circuit has held that *Alleyne* is not applicable to cases pending on collateral review in *In re:  Mazzio*, 756 F.3d 487 (6th Cir. 2014)(Reply, ECF No. 302, PageID 6581).  However, he asserts *Mazzio* is distinguishable because the broad statement – "We now hold *Alleyne* does not apply retroactively to cases on collateral review" – is made in the context of denying permission to file a second or successive § 2255 motion.  He further concedes the Sixth Circuit has also made the same statement in *Rogers v. United States*, 561 Fed. Appx. 440 (6th Cir. 2014) cert denied, 135 S. Ct. 500 (2014), but notes that *Rogers* is unpublished and the statement is made in dictum  (Reply, ECF No. 302, PageID 6581).

This Court disagrees with Baltimore's contention that the retroactivity point in *Rogers* is dictum.  The court relied expressly on that conclusion to find the trial court had not violated Defendant Rogers' Sixth Amendment rights. 561 Fed. Appx. at 443-44.  And while the decision in *Mazzio* was in the context of denying permission for a second § 2255 motion, and thus included the finding that the Supreme Court had not expressly made *Alleyne* retroactive (a finding needed to satisfy 28 U.S.C. § 2255(h)(2)), it also concluded *Alleyne* did not fall into one

of the *Teague v. Lane* exceptions to non-retroactivity. It also expressly endorsed the *Rogers* decision. Therefore, *Alleyne* does not render the conviction on Count 5 unconstitutional.

In the alternative, even assuming *Alleyne* is not applicable and a jury verdict is not required on this point, Mr. Baltimore asserts Judge Rice also failed to make the requisite finding for the Count 6 enhancement. The Government responds by quoting Judge Rice's finding during sentencing that the evidence supports the enhancements to the four convictions by a preponderance or greater weight of the evidence (Response, ECF No. 301, PageID 6566, quoting Sentencing Tr., ECF No. 265, PageID 5793). Mr. Baltimore quibbles with this argument by comparing what the Presentence Investigation Report recommended with the words Judge Rice used (Reply ECF No. 302, PageID 6583). Judge Rice found that the evidence supported the enhancements charged in the Second Superseding Indictment which included that Mr. Baltimore was a "principal" administrator or organizer of the criminal enterprise. Moreover, the evidence strongly supported that conclusion. Mr. Baltimore points to no authority, Sixth Circuit or otherwise, requiring a trial judge to use particular language in making an enhancement finding.

Apart from defending the conviction on Count 5 on the merits, the United States asserts the claim is procedurally defaulted because it was available on direct appeal and not raised (Response, ECF No. 301, PageID 6565). Baltimore does not respond to this defense in his Reply (See Reply, ECF No. 302, PageID 6580-84).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged

> violation of federal law; or demonstrate that failure
> to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).

Although most of the cited law has been made in habeas corpus cases from state courts under 28 U.S.C. § 2254, the procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions. *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

The claim made in Ground One was fully available on direct appeal and was not raised. It is therefore barred by Mr. Baltimore's procedural default in not raising it on direct appeal.

Ground One should therefore be dismissed with prejudice.

## Ground Two: Ineffective Assistance of Counsel Regarding Jury Instructions and Special Verdict Forms

In his Second Ground for Relief, Mr. Baltimore asserts he received ineffective assistance of trial counsel when his attorney, Mr. Lehmkuhl, did not object to the omission from jury instructions and the special verdict forms of language which would have required the jury to decide on the presence or absence of the principal organizer fact discussed in Ground One. He also asserts he received ineffective assistance of trial counsel when his attorney did not object to the mandatory life sentence imposed on Count Five because no proper enhancement finding had been made (Amended Petition, ECF No. 299, PageID 6522).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance*, 556 U.S. 111 (2009).

12

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

Because Ground One fails on the merits, Ground Two is also without merit.  It cannot be deficient performance to fail to raise a claim that is without merit.  Because *Alleyne*, *supra*, is not applicable retroactively, it cannot have been deficient performance of counsel to fail to raise an *Alleyne* claim with respect to the jury instructions.  Because Judge Rice made an appropriate enhancement finding, it cannot have been deficient performance to fail to object to lack of a judicial finding on the enhancement.

Ground Two should be dismissed with prejudice.

**Ground Three:  Ineffective Assistance of Trial Counsel in Plea Negotiations**

In his Third Ground for Relief**,** Mr. Baltimore asserts he received ineffective assistance of trial counsel when Mr. Lehmkuhl (1) encouraged him to reject a favorable plea offer and (2) wrongly advised him that the findings required by 18 U.S.C. § 848(b) are elements of Count 5 requiring proof beyond a reasonable doubt to the jury.  This Third Ground was the focus of the evidentiary hearing and the post-hearing briefs.

The Sixth Amendment constitutional right to the effective assistance of counsel extends to the plea bargaining process which includes the duty of an attorney to communicate an offered plea bargain.  *Missouri v. Frye*, 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012). The same *Strickland*  standards apply in evaluating ineffective assistance claims in cases which resulted in a negotiated plea.  *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988).   In order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial.  *Hill*, 474 U.S. at 58.  Moreover, he must show that there would have been a reasonable chance he would have been acquitted had he gone to trial. *Id.* at 59.

"The test is objective, not subjective." *Plumaj v. Booker*, 629 Fed. Appx. 662 (6th Cir. 2015), *quoting Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012).  To obtain relief, [a petitioner] "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).   The

rationality of such a rejection is typically based on multiple factors, including the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain. *See Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 F. Appx 517, 522 (6th Cir. 2012).

Mr. Baltimore asserts Mr. Lehmkuhl's performance as to the plea bargaining process was deficient as follows:

> 67. As in *Lafler*, the performance of Mr. Baltimore's trial counsel fell below an objective standard of reasonableness because he erroneously advised and unreasonably encouraged Mr. Baltimore to reject the plea offer and proceed to trial by (1) claiming that the case was winnable, ripe for success, and that he had an excellent chance of prevailing at trial, (2) by claiming that Count 5 would be difficult for the government to prove, which is why it is rarely attempted, (3) by claiming that the government would have a difficult time proving the "in furtherance of drug trafficking" element of Count 3, and (4) by wrongly informing Mr. Baltimore that both of the evidentiary parameters set forth in 21 U.S.C. § 848(b) are elements of the CCE offense (Count 5) that have to be decided by a jury beyond a reasonable doubt. With respect to the latter point, Mr. Baltimore clarified that if he had been correctly informed that any of the facts related to any of the Counts of the indictment could have been decided by the Court based on a preponderance of the evidence, he would have taken the plea offer. Mr. Baltimore essentially claims that the erroneous advice provided by his trial counsel prevented him from accepting the plea offer.

(Amended Motion, ECF No. 299, PageID 6526.)

The plea bargain that Mr. Baltimore asserts he rejected because of deficient advice is the one made by the United States during the best case/worst case scenario hearing in open court on October 5, 2009 (Tr., ECF No. 274). Under that offer, Mr. Baltimore would plead guilty to Counts 1 and 3 (ECF No. 299, PageID 6527, ¶ 69). The plea would be under Fed. R. Crim. P.

11(c)(1) with a recommended sentence of ten years on Count 1 and a consecutive seven years on Count 3. *Id.* The plea was to be conditional so that if Judge Rice refused to accept it after reviewing the Presentence Investigation Report, Mr. Baltimore would be free to withdraw his guilty plea. *Id.*

The Government's Response, accompanied by Mr. Lehmkuhl's Affidavit,[3] essentially asserts Mr. Baltimore's position on this claim is not credible (ECF No. 301, PageID 6567-68). Because of contradiction on that basic level, Mr. Baltimore sought and was given an evidentiary hearing (Reply, ECF No. 302, PageID 6587).

**Deficient Performance Prong**

In his Post-Hearing Brief, Mr. Baltimore recasts his claims of deficient performance as follows:

> 1. Mr. Lehmkuhl errantly informed Mr. Baltimore that 21 U.S.C. § 848(b)(1)(requiring a finding that defendant was "the principal administrator, organizer, or leader of the enterprise or [wa]s one of several such principal administrators, organizers, or leaders" of the alleged continuing criminal enterprise ("CCE")) was an element of the CCE offense that had to be decided by a jury beyond a reasonable doubt. Under the law applicable at that time, it was sentence enhancement factor, which could be decided by the Court at sentencing based on a preponderance of the evidence.

> 2. Mr. Lehmkuhl errantly informed Mr. Baltimore that the focus of their defense on the CCE charge would be that among the offenses or conspiracies comprising the CCE charge, Mr. Baltimore was not involved in a single conspiracy or offense with five or more other persons, and that Mr. Baltimore did not

---

[3] In the Order for Answer, the Magistrate Judge advised the parties that, because Mr. Baltimore had made a claim of ineffective assistance of counsel, he had waived attorney-client privilege for any communications on the relevant subject matter (ECF No. 293, PageID 6428).

supervise five or more persons at one time. However, to prevail on the CCE count as a matter of law, the government did not have to prove that Mr. Baltimore had been involved in a single offense with five or more persons and that he supervised five or more persons at the same time. In essence, Mr. Lehmkuhl errantly informed Mr. Baltimore that he would focus their defense to the CCE charge on two things that the government did not have to prove.

3. With respect to Count 3, the gun charge, Mr. Lehmkuhl failed to inform and explain to Mr. Baltimore that he could be convicted of that charge as an aider and abettor.

4. In addition to these three pieces of erroneous legal advice provided during the plea negotiations, Mr. Lehmkuhl also made erroneous written and oral comments to Mr. Baltimore regarding the weaknesses in the government's case and the strength of the defense.

(ECF No. 329, PageID 8414-15.)

To prove the erroneous legal advice, Mr. Baltimore relies heavily on letters Mr. Lehmkuhl sent him dated September 1, 2009 (ECF Nos. 299-1 and 299-2, PageID 6537-43).

As to the required "principal administrator" finding, then a sentencing factor but now required to be found by a jury under *Alleyne*, Mr. Baltimore claims in his Post-Hearing Brief that Mr. Lehmkuhl told him this was a required element of the crime which the Government would have to prove beyond a reasonable doubt (Brief, ECF No. 329, PageID 8418). However, the letter does not in fact discuss the burden of proof or who the factfinder on this point would be. Mr. Baltimore, however, claims the distinction is crucial because of his aversion to Judge Rice as a factfinder:

At that time, Mr. Baltimore really believed that Judge Rice did not like him, and he testified that if he had known that § 848(b)(1) was a sentence enhancement factor instead of an element of the offense, he would not have put his life in the hands of Judge Rice:

17

> "There's no way. If I knew there was anything that he could decide, my guilt I would have taken a plea, the 20 year plea, the 17 year plea, I would have not taken that chance. There's no way."
> (Id. at 167:4-13.)

(Brief, ECF No. 329, PageID 8420.)

As to the five or more managed persons question, the text of the first of these letters does state that the Government had to prove that Mr. Baltimore acted as an organizer, manager, or supervisor of five or more other persons, but does not state the Government needed to prove that the management of five or more had to be all at the same time. Rather Mr. Lehmkuhl stated the defense would be that "at no time" did Mr. Baltimore have five or more subordinates (ECF No. 299-1, PageID 6539). Mr. Baltimore testified in the evidentiary hearing that he understood this to mean that the Government would have to prove that he managed five people at one time; that "was the way it was explained to me." (Tr., ECF No. 43 at 148:4-19.) Although Mr. Baltimore argues in his Brief (ECF No. 329, PageID 8421) that Mr. Lehmkuhl admitted his advice about defense of the continuing criminal enterprise charge was wrong, the United States points out that Mr. Lehmkuhl expressly denied making the "at one time" statement (Brief, ECF No. 333, PageID 8462, n.2).

Mr. Baltimore claims he learned the advice was wrong after he was convicted and sentenced (Tr. at 168:11-15), although he would have heard the correct law on this point when Judge Rice read the jury instructions. More importantly, he claims that had he known the advice was wrong, he would have accepted the plea offer, a point to be discussed below with respect to prejudice.

The second September 1, 2009, letter that Mr. Lehmkuhl sent Mr. Baltimore was about Count 3, the gun charge (ECF No. 299-2, PageID 6541-43). Although it cites the aider and abettor statute by number, it does not discuss an aider and abettor theory of liability on Count 3;

18

it discusses at length the *Pinkerton* theory of liability. Mr. Lehmkuhl opined that the Government would have a difficult time proving the "in furtherance of drug trafficking" element of this offense. *Id.*

The letter as written does not contain incorrect legal advice. Rather, the advice is incomplete for failure to discuss aider and abettor liability. Mr. Baltimore claimed at the hearing that Mr. Lehmkuhl did not correct this omission during the plea negotiations. Mr. Baltimore of course knew that he did not have actual possession of the firearm on the pleaded date because the shooting happened in Dayton while he was in Indianapolis. He claims he only learned of the aider and abettor possibility after he was convicted and sentenced.[4] He says nothing of his understanding of the *Pinkerton* theory which was quite viable at trial, given the connection of both Harris and Norman with his drug operation. More importantly, he claims that if he had only known about the aider and abettor theory, he would have taken one of the plea bargains offered to him (ECF No. 329, PageID 8425).

Mr. Baltimore also characterizes several of Mr. Lehmkuhl's assessments of the strengths of the Government's case as misleading. For example, Mr. Lehmkuhl said that a 21 U.S.C. § 848 case "is difficult for the Government to prove, which is why it is rarely attempted." He also made the comment about the difficulty of proving that a firearm is possessed in furtherance of a drug trafficking crime. He claims Mr. Lehmkuhl said the case was winnable and characterized himself as someone Judge Rice brings in for problem cases or big cases and that he was excited to take the case to trial (See testimony quoted at ECF No. 329, PageID 8427).

It is very rare in this Magistrate Judge's experience for a habeas attorney to have written legal advice from a trial attorney available for cross-examination. Mr. Baltimore's present

---

[4] Of course, the Government argued that theory and Judge Rice instructed on it, so he should have learned about it during trial.

counsel has made as strong a case as the texts will bear that the September 1, 2009, letters are incomplete and might be misunderstood by a lay criminal defendant. At most, they do not contain wrong legal advice, but fail to contain complete correct legal advice. However, counsel has cited no legal authority for the proposition that failure to convey complete legal advice to a client in writing constitutes deficient performance. But even assuming that to be the law, Mr. Baltimore's Third Ground for Relief falters on the prejudice prong.

Having been sentenced to life imprisonment, Mr. Baltimore now claims that if Mr. Lehmkuhl had only given him complete correct legal advice, he would have pleaded guilty as part of one of the plea bargains that was offered. The Magistrate Judge finds this claim to be not credible. It is easy for a person who has made a tough choice which has had a bad result to construct reasons why he would have made a different choice with different information when he now knows the result of that other choice – a seventeen year sentence as opposed to life imprisonment – would have been a much better result. This alone casts doubt on the credibility of Mr. Baltimore's claim.

On December 24, 2008, the Government conveyed to Aaron Durden, who was then Mr. Baltimore's trial attorney, an offer to dismiss the continuing criminal enterprise charge (Count 5) if Mr. Baltimore would plead to the remaining counts which would yield a sentencing guideline of 262 to 327 months (Stipulation, ECF No. 318, PageID 6683; Evid. Hr'g Tr., ECF No. 324, PageID 7692; JX 1 at ECF No. 328). The Government anticipated Judge Rice would sentence within that range unless he departed downward, a completely reasonable expectation, given Judge Rice's general sentencing philosophy, whether or not he "liked" Mr. Baltimore. Mr. Baltimore testified at the hearing that this offer was never presented to him (Evid. Hr'g Tr., ECF No. 324, PageID 7809-11). ) Mr. Durden was not called as a witness.

In early September 2009, the Government offered the same plea bargain as before, but with a Government recommendation of twenty years (Evid. Hr'g Tr., ECF No. 324, PageID 7823-4 ; Joint Stips. of Fact, ECF No. 318, Page ID 6683, ¶ 1). Mr. Baltimore rejected the offer. Mr. Lehmkuhl reported the rejection and said it was the first time Mr. Baltimore had shown any receptivity to a negotiated resolution, but that he "will not sign a deal which could result in more than ten years." (JX 4.) On September 23, 2009, in a pro se motion to dismiss for lack of a speedy trial, Mr. Baltimore advised the Court of his "eagerness to proceed to trial."

At the evidentiary hearing, Mr. Lehmkuhl testified that Mr. Baltimore always had his sights set on going to trial (Evid. Hr'g Tr., ECF No. 324, PageId 7756; JX 17). When Mr. Lehmkuhl would bring up a possible plea deal, it worsened the attorney-client relationship. *Id.* Mr. Baltimore had fired Mr. Durden because he was not willing to take the case to trial. *Id.* Mr. Lehmkuhl also testified that Mr. Baltimore rejected the seventeen-year deal because it was too much time, which is consistent with what Mr. Lehmkuhl said in rejecting the deal and insisting Mr. Baltimore would not take more than ten years.

Mr. Lehmkuhl denied telling Mr. Baltimore that the case was winnable and said he advised him to take the plea (Evid Hr'g Tr., ECF No. 324, PageID 7740-1, 7751, 7771). But at the evidentiary hearing Mr. Baltimore did not attempt to prove the case was not winnable. The case was obviously complex and covered a number of years. The case took six weeks to try. Any case that complex would not have been easy for the Government to win. It is commonplace that memories fade and witnesses can be hard to find. Mr. Baltimore made the same arguments himself in seeking dismissal for pre-indictment delay, but the problems with delay can in fact cut both ways.

Finally, Mr. Baltimore's statements during the evidentiary hearing show that he could not

tender a guilty plea that the Court could accept.  He was not willing to admit any facts supporting the indictment and occurring within the limitations period (ECF No. 333, PageID 8466-67).  This is consistent with his position taken all along in the case that the Indictment was unlawful, a position to which he adheres despite the contrary conclusion of the Sixth Circuit.

He also continued to deny any involvement in the Harris shooting, but admission of those facts would have been necessary for a valid guilty plea on Count 3.  Indeed, such an admission would be necessary now if the Court ordered the last plea bargain offered by the Government to be offered again.  At the evidentiary hearing Mr. Baltimore swore under oath he had nothing to do with the Harris shooting and that it was a private dispute between Norman and Harris (Evid. Hr'g Tr., ECF No. 324, PageID  7893-4).  If he were willing to admit his involvement when pleading guilty on Count 3 if the Court granted relief, he would be caught in perjury, because both states of the facts cannot be true.  And if Mr. Baltimore is willing to lie once under oath to get a better sentence, the Court must ask what other lies he has been willing to tell to achieve that goal.

Mr. Baltimore has not proved Mr. Lehmkuhl's performance deprived him of the favorable plea bargain he would otherwise have taken.  The Third Ground for Relief should be dismissed.

**Ground Four:  Ineffective Assistance of Trial and Appellate Counsel Regarding Overt Act Allegations and the Statute of Limitations**

In his Fourth Ground for Relief, Mr. Baltimore asserts that Mr. Lehmkuhl provided ineffective assistance when he failed to move to strike overt act 12 of Count 4 and overt act 21 of Count 1 because, absent these overt acts, the Government was barred by the statute of limitations

from obtaining convictions on Counts 4 and 5.  He further asserts he received ineffective assistance of appellate counsel when his appellate attorney failed to raise the same claims (Amended Motion, ECF No. 299, PageID 6528).

The United States responds that an indictment need not, as a matter of law, allege any specific overt acts.  Rather, it is sufficient "if at least one act that shared the same character and purpose of the conspiracy was committed by a co-conspirator within the five-year [statute of limitations] period."  (ECF No. 301, PageID 6569, *citing United States v. Brown*, 332 F. 3d 363 (6th Cir. 2003)).  The Government notes that it proved continued acts by Mr. Baltimore in furtherance of the conspiracy into the year 2007.  *Id.*

As the Court understands Mr. Baltimore's argument on this Ground, it is that Mr. Lehmkuhl could have moved to strike from the Second Superseding Indictment overt act 21 of Count 1 and overt act 12 of Count 4 which respectively read:

> 21.  On or about December 15, 2003, the defendant, **ANTHONY BALTIMORE aka Tricky,** assigned ownership of a Rolex watch, 2002 Cadillac Escalade, 2001 Ford Mustang Cobra and a 1999 GMC Hummer to an attorney from California.

> 12. On or about September 15, 2003, a 2002 Form 1120S in the name of Prestige Imports of Dayton and Cincinnati, LLC was filed with the Internal Revenue Service. This Form 1120S was filed with an inflated gross receipts figure. The intent of filing the form was to conceal that the deposits for this company included funds from Anthony Baltimore's drug business. The tax return was signed by Olivia Baltimore, acting as the Power of Attorney for Anthony Baltimore.

The United States does not dispute Mr. Baltimore's claim that an indictment can be attacked pretrial by motion under Fed. R. Crim. P. 12.  But neither does Mr. Baltimore dispute the Government's claim that specific overt acts need not be pleaded in an indictment or that it is sufficient for the Government to prove an act by a co-conspirator within the limitations period.

Supposing, then, a motion to strike had been made and was granted, this would not have prevented the United States from proving at trial that it had indicted Mr. Baltimore within the limitations period.

Moreover, in overruling motions to dismiss filed by Mr. Baltimore pro se and by Mr. Lehmkuhl, Judge Rice noted that the initial indictment alleged overt acts regarding Count 1 which had occurred within the five-year statute of limitations and that Count 3 was alleged to have also occurred within the five-year period, albeit only by about four days (Decision and Entry, ECF No. 167, PageID 713.) He also noted that neither Mr. Baltimore nor Mr. Lehmkuhl had made a statute of limitations argument, relying instead on the equitable doctrine of pre-indictment delay. *Id.*

Given the proof available to the United States and actually presented at trial, it is not evident to the Court that the omitted motion to strike would have prevented trial or conviction on the basis of the statute of limitations. Therefore Mr. Baltimore has not shown it was ineffective assistance of trial counsel to fail to make that motion.

Mr. Baltimore also asserts he received ineffective assistance of appellate counsel when this claim was not raised on appeal. A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967); *United States v. Cronic*, 466 U.S. 648 (1984). The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600 (1974). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger*

*v. Kemp*, 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.") Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986).

However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua*, 341 F.3d at 441; *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle*, 171 F.3d 408, 427-29 (6th Cir. 1999). Counsel can be ineffective by failing to raise a "dead-bang winner," defined as an issue which is obvious from the trial record and which would have resulted in a reversal on appeal, even if counsel raised other strong but unsuccessful claims. *Mapes*, *supra*, *citing Banks v. Reynolds*, 54 F.3d

1508, 1515 n. 13 (10th Cir. 1995); *see also Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989).

In its opinion on appeal, the Sixth Circuit found

> The evidence offered at trial showed that from 1996 until the time of indictment, Baltimore conspired with others to buy and sell heroin, marijuana, and cocaine in southern Ohio and northern Kentucky. During this period, Baltimore purchased drugs from suppliers across the United States and distributed them to various individuals who would sell them on Baltimore's behalf.

(ECF No. 277, PageID 6259.)  The court also noted that no statute of limitations claim was made on appeal. *Id.*  at PageID 6264, n. 3.  There is no indication in the Sixth Circuit's decision that a statute of limitations claim would have been meritorious, much less that it would have been stronger than the claims actually raised.

Mr. Baltimore has not proved the ineffective assistance of trial counsel and ineffective assistance of appellate counsel claims made in his Fourth Ground for Relief and it should therefore be dismissed.


**Ground Five:  Erroneous Jury Instructions on Count 3.**


In his Fifth Ground for Relief, Mr. Baltimore asserts that the jury instructions given on Count 3 permitted the jury to find him guilty in any of three different ways, but two of the ways were erroneous (Amended Motion, ECF No. 299, PageID 6531).

The United States asserts this claim could have been but was not raised on direct appeal and is therefore procedurally defaulted (Response, ECF No. 301, PageID 6569).  Mr. Baltimore

makes no response to this defense (Reply, ECF No. 302, PageID 6591-94). It is well taken because the claim could have been raised on direct appeal.

Ground Five should be dismissed with prejudice.

**Ground Six: Ineffective Assistance of Trial Counsel in Failing to Object to Erroneous Jury Instructions on Count 3.**

In his Sixth Ground for Relief, Mr. Baltimore claims he received ineffective assistance of trial counsel when Mr. Lehmkuhl did not object to the erroneous jury instructions on Count 3 (Amended Motion, ECF No. 299, PageID 6634-35). The Government responds that the instructions were not erroneous as it had argued on the merits of Ground Five and also that counsel's omission was not prejudicial.

The jury instructions on Count Three read in their entirety as follows:

> Count 3 of the Indictment charges that, on or about October 27, 2002, in the Southern District of Ohio, Defendant Anthony Baltimore knowingly possessed a firearm, namely, a .45 caliber semi-automatic handgun, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21 of the United States Code, Sections 841 (a) ( 1) and 846.
>
> The allegations in Count 3 of the Indictment, if proven beyond a reasonable doubt, constitute a violation of Sections 924(c)(1)(A) and 2 of Title 18 of the United States Code. Section 924(c)(1)(A) of Title 18 of the United States Code provides, in part, that it is unlawful for any person, in furtherance of a drug trafficking crime which may be prosecuted in a court of the United States, to possess a firearm.

Cocaine, marijuana and heroin are controlled substances.

The United States may establish the guilt of the Defendant for possession of a firearm, as charged in Count 3 of the Indictment, in three separate ways, to wit: 1) as a principal, in other words, as someone who has committed all essential elements of an offense; 2) under the legal rule that all members of a conspiracy are responsible for acts committed by the other members, as long as those acts are committed to help advance the conspiracy, and are within the reasonably foreseeable scope of the agreement; and 3) as an aider and abettor.

The United States must prove, beyond a reasonable doubt, each of the following essential elements in order to establish that the Defendant, as a principal, is guilty of the offense of possessing a firearm in furtherance of a drug trafficking crime as charged in Count 3 of the Indictment.

First, that the Defendant committed the crime of conspiracy to distribute and/or to possess with intent to distribute cocaine, heroin and/or marijuana, as alleged in Count 1 of the Indictment;

Second, that the Defendant knowingly possessed a .45 caliber semi-automatic handgun; and

Third, that the possession was in furtherance of the commission of the conspiracy, the drug trafficking crime charged in Count 1 of the Indictment.

In addition to the preceding essential elements, the United States must prove by the preponderance of the evidence that the Defendant possessed that firearm in furtherance of that drug trafficking crime in the Southern District of Ohio.

As indicated, you may also find that the Defendant committed this offense based on the legal rule that all members of a conspiracy are responsible for acts committed by the other members, as long as those acts are committed to help advance the conspiracy, and are within the reasonably foreseeable scope of the agreement.

28

In other words, under certain circumstances, the act of one conspirator may be treated as the act of all. This means that all the conspirators may be convicted of a crime committed by only one of them, even though they did not all personally participate in that crime themselves.

But for you to find the Defendant guilty of the offense of possessing a firearm in furtherance of a drug trafficking crime, based on this legal rule, you must be convinced that the Government has proved each and every one of the following elements beyond a reasonable doubt:

First, that the Defendant was a member of the conspiracy charged in Count 1 of the Indictment.

Second, that after the Defendant joined the conspiracy, and while he was still a member of it, a member of the conspiracy committed the offense of possessing a firearm, that is a .45 caliber semi-automatic handgun in furtherance of a drug trafficking crime, that is a conspiracy to distribute and/or to possess with intent to distribute cocaine, heroin and/or marijuana, as alleged in Count 1 of the Indictment;

Third, that the co-conspirator committed this offense to help advance that conspiracy; and

Fourth, that this offense was within the reasonably foreseeable scope of the conspiracy alleged in Count 1 of the Indictment. The crime must have been one that the Defendant could have reasonably anticipated as a necessary or natural consequence of the agreement. This does not require proof that he specifically agreed or knew that the offense would be committed. But the Government must prove, beyond a reasonable doubt, that the offense of ossessing a .45 caliber semi-automatic handgun, in furtherance of a conspiracy to distribute and/or to possess with intent to distribute cocaine, heroin and/or marijuana, as alleged in Count 1 of the Indictment, was within the reasonable contemplation of the persons who participated in that conspiracy. No defendant is responsible for the acts of others that go beyond the fair scope of the agreement, as that defendant understood it.

29

In order to establish that the co-conspirator committed the offense of possessing a firearm in furtherance of a drug trafficking crime, the United States must prove, beyond a reasonable doubt, each of the following essential elements:

First, that the co-conspirator committed the crime of conspiracy to distribute and to possess with intent to distribute cocaine, heroin and/or marijuana, as alleged in Count 1 of the Indictment;

Second, that the co-conspirator knowingly possessed a .45 caliber semi-automatic handgun; and

Third, that the possession was in furtherance of the commission of the conspiracy, the drug trafficking crime charged in Count 1 of the Indictment.

In addition to the preceding essential elements, the United States must prove by the preponderance of the evidence that the co-conspirator possessed that firearm in furtherance of that drug trafficking crime in the Southern District of Ohio.

The third way in which the Government can establish the guilt of the Defendant on Count 3 of the Indictment is through an aiding and abetting theory, under which his guilt may be established without proof that he personally did every act constituting the offense charged.

The law provides that whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In other words, every person who willfully participates in the commission of a crime may be found to be guilty of that offense. Participation is willful -done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with the

specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.

In order to aid and abet another to commit a crime, it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say, that he willfully seeks by some act or omission of his to make the criminal venture succeed.

You of course may not find the Defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the Defendant participated in its commission of the offense of possessing a firearm in furtherance of a drug trafficking offense or crime, as charged in Count 3 of the Indictment.

Mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that the Defendant aided and abetted the crime, unless you find beyond a reasonable doubt that the Defendant was a participant and not merely a knowing spectator.

The term "firearm" means any weapon which will, is designed to or may readily be converted to expel a projectile by the action of an explosive.

The term "to possess" means to exercise control or authority over something at a given time. There are several types of possession - actual, constructive, sole and joint.

The possession is considered to be actual possession when a person knowingly has direct physical control or authority over something. The possession is called constructive possession when a person does not have direct physical control over something, but can knowingly control it and intends to control it, sometimes through another person.

> The possession may be knowingly exercised by one person exclusively, which is called sole possession, or the possession may be knowingly exercised jointly when it is shared by two or more persons.
>
> Possession of a firearm is "in furtherance of a drug trafficking crime," when it was possessed to advance or to promote the drug trafficking crime. The mere possession of a firearm in the area where a drug trafficking crime is occurring is not sufficient to constitute possession of a firearm "in furtherance of a drug trafficking crime."

(ECF No. 222, PageID 1132-41.)  These are the instructions on Count 3 as the jury would have heard them, but also as they would have seen them during deliberations.  It has been Judge Rice's uniform practice as a judge of this Court to provide the jury with a printed copy of the instructions to keep with them during deliberations  (See Jury Instructions, ECF No. 222, PageID 1194.)

In arguing Ground Five, Mr. Baltimore asserts that although there are three alternative ways of proving guilt on the firearms charge made in Count 3, the Government never had any proof that Mr. Baltimore was guilty as a principal.  In fact, the shooting of Rodney Harris by Tremaine Norman during which Norman used the firearm  in question, happened in Dayton, Ohio,  at a time when Mr. Baltimore was indisputably in Indianapolis, Indiana.

Instead, the Government argued both liability under *Pinkerton v. United States*, 328 U.S. 640 (1946)(allowing members of a conspiracy to be held liable for acts of co-conspirators done in furtherance of the conspiracy) and aider and abettor liability under 18 U.S.C. § 2.  Under these circumstances, Mr. Baltimore argues, the portion of the instructions regarding liability as a principal "should not have been presented to the jury"  (ECF No. 299, PageID 6532) and it was deficient performance for Mr. Lehmkuhl to fail to object. *Id.*  at PageID 6534.     With    respect

to the *Pinkerton* theory of liability, Mr. Baltimore argues he could not be held liable on that theory because Tramaine Norman was never charged with that offense. *Id.* at PageID 6532.

Mr. Baltimore presents no authority holding that the instructions on Count 3 are in error in the sense that they incorrectly state the law. As the Magistrate Judge understands it, Mr. Baltimore's argument is that the jury was given too much law, rather than incorrect law. But the instructions on Count 3 must be read in the context of the Instructions as a whole. That is what Judge Rice told the jurors they must do: "You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole" and again

> The Court cannot embody all the law in any single part of these instructions. In considering one portion, you must consider it in the light of and in harmony with all the instructions.
>
> The Court has instructed you on all the law necessary for your deliberations. Whether or not certain instructions are applicable may depend upon the conclusions you reach on the facts. If you have an impression that the Court indicated how any disputed fact should be decided, you must put aside such impression because only you determine such matters.

(ECF No. 222, PageID 1073, 1193.) Nor does provision of instructions on all three theories of liability on Count 3 somehow constitute a finding by the Court that the jury could properly return a verdict on any one of the three. Near the close of the Instructions, Judge Rice reminded the jury: "I state to you categorically that the Court has no opinion as to whether the Government has or has not proved the Defendant guilty of any of the offenses charged." *Id.* at PageID 1191.

Mr. Baltimore also presents no authority for the proposition that failure to object to a correct but superfluous jury instruction constitutes deficient performance by an attorney. Because the instruction on principal liability on Count 3 is a correct statement of the law, Mr. Lehmkuhl could well have made the strategic decision not to object so as to allow the jury to see

that the Government obviously could not prove one of its alternative theories on Count 3 and thereby heighten the impression that the Government's case as a whole was weak.

In any event, even if it was deficient performance for Mr. Lehmkuhl to fail to object to the principal offender portion of the instruction, Mr. Baltimore has proved no prejudice. The Government did not argue that theory at all and the evidence was clear that Mr. Baltimore could not have been the principal offender because he was in Indianapolis at the time of the offense.

With respect to possible *Pinkerton* liability on Count 3, Mr. Baltimore argues he could not be convicted on that theory because Norman was not charged with the 18 U.S.C. § 924(c)(Amended Motion, ECF No. 299, PageID 6532-33, relying on *United States v. Williams*, 894 F.2d 208, 212 (6th Cir. 1990)). The Government disputes that that is the holding of *Williams* and Mr. Baltimore responds by quoting the language of *Williams*.

As the Government asserts, *Williams* is not a case where the court had to decide if a person could be convicted of possessing a firearm under 18 U.S.C. § 924(c) as a co-conspirator when the person who was the principal has not been charged. Rather, the *Williams* court decided it would be inequitable to apply a firearm-possession-enhancement under the Sentencing Guidelines to two co-conspirators who were not principals when the enhancement was not applied to another co-conspirator, Williams, who had been charged as a principal but acquitted. In deciding the case, the Sixth Circuit wrote:

> Under the theory of co-conspirator liability established in *Pinkerton v. United States,* 328 U.S. 640, 646-47, 90 L. Ed. 1489, 66 S. Ct. 1180 (1946), the overt act of one partner in crime is attributable to all members of the conspiracy. However, an overt act of one partner cannot be charged against other co-conspirators if it is not charged against the partner who allegedly committed the act, and the act of one partner cannot be charged against other co-conspirators in an inconsistent manner. This would be inequitable. In the present case, the district court at the sentencing hearing

34

> decided that defendant Williams, who was present at the drug sale and acquitted of using and carrying a firearm in violation of 18 U.S.C. § 924, was not to be given a two-level increase for weapons possession. If Williams' acquittal cast doubt about the appropriateness of using the weapons possession guideline against Williams, this doubt should have precluded its use, based on his conduct, against Blanton and Davis as well.

894 F. 2d at 212-13. The Sixth Circuit cites no authority in its own prior case law or that of other circuits for the proposition that there is an uncharged principal exception to *Pinkerton* liability. Because there is no holding to that effect in *Williams* and because *Pinkerton* supplies the underlying co-conspirator liability law from the Supreme Court, it was not deficient performance on Mr. Lehmkuhl's part to fail to object to the *Pinkerton* portion of the instructions on the basis of *Williams*.

Ground Six should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the § 2255 Motion be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

February 6, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

35

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).