# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                Plaintiff,    :    Case No. 3:07-cr-173

                                        District Judge Walter H. Rice
- vs -                                  Magistrate Judge Michael R. Merz

ANTHONY BALTIMORE,

                Defendant.    :

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant Anthony Baltimore's Amended Motion to Vacate, Set Aside, or Correct a Sentence, pursuant to 28 U.S.C. § 2255 (Doc. No. 299). The Magistrate Judge filed a Report and Recommendations which recommended dismissal (the "Report," ECF No. 334). Defendant filed timely Objections (ECF No. 336). Judge Rice then recommitted the matter for reconsideration in light of the Objections (Recommittal Order, ECF No. 337). The United States has filed no response to the Objections and its time to do so has expired. Thus the Objections are ripe for consideration.

The § 2255 Motion pleads six Grounds for Relief (Amended Motion, ECF No. 299). The Objections do not raise any issues with the recommended dismissal of Grounds Four and Five and they will not be further discussed. The other Objections take the grounds for relief out of order, but the analysis here will follow the order in which the grounds were pleaded.

1

**Ground One: Conviction on Count Five Unconstitutional Under *Alleyne v. United States*. 570 U.S. 99 (2013).**

*Alleyne* **Retroactivity**

In his First Ground for Relief, Baltimore asserts his conviction on Count 5 for violating the continuing criminal enterprise statute, 21 U.S.C. §§ 848(a), (b)(1), and (b)(2)(A) is unconstitutional because neither the jury nor the trial judge found that he was "the principal administrator, organizer, or leader of the enterprise."

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at ___. Eventually the Supreme Court held any fact that makes a defendant eligible for the mandatory minimum sentence for an offense is an "element" which must be submitted to the jury. *Alleyne v. United State,*. 570 U.S. 99 (2013), overruling *Harris v. United States*, 536 U.S. 545 (2002).

*Alleyne* was decided almost a year after the Sixth Circuit affirmed Mr. Baltimore's conviction. The Report concluded *Alleyne* would provide no relief to Baltimore because it was not retroactively applicable to cases pending on collateral review (Report, ECF No. 334, PageID 8478, relying on *In re: Mazzio*, 756 F.3d 487 (6th Cir. 2014), and *Rogers v. United States,* 561 Fed. Appx. 440 (6th Cir. 2014), cert denied, 135 S. Ct. 500 (2014). The Report disagreed with Baltimore's argument that the relevant language in *Rogers* was dictum (ECF No. 334, PageID 8478-79).

2

The Objections do not respond to that point, but assert that *Alleyne* is retroactively applicable on collateral review by analogy to *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). In *Montgomery* the Supreme Court declared that its prior decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), announced a new substantive rule of constitutional law, to wit, that mandatory life sentences without parole for juvenile offenders were unconstitutionally cruel and unusual punishment. *Montgomery* concluded that *Miller* was therefore applicable on collateral review. Baltimore had called *Montgomery* to the Magistrate Judge's attention (ECF No. 331), but the Report did not discuss the case and it therefore requires analysis here.

Subject to two narrow exceptions, a case that is decided after a defendant's conviction and sentence become final, as *Alleyne* was here, may not provide the basis for federal habeas relief if it announces a new rule. *Graham v. Collins*, 506 U.S. 461 (1993); *Stringer v. Black,* 503 U.S. 222 (1992); *Teague v. Lane*, 489 U.S. 288 (1989).

"Two exceptions to the *Teague* rule, however, permit the retroactive application of a new rule whenever: 1) the rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or otherwise prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense; or 2) the rule announces a new "watershed" rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *In re Carl Green,* 144 F.3d 384, 386 (6th Cir. 1998), *citing Caspari v. Bohlen*, 510 U.S. at 396.

A Supreme Court decision announces a new rule within the meaning of *Teague* where the issue addressed was susceptible to debate among reasonable minds. *Butler v. McKellar,* 494 U.S. 407, 412-415 (1990). A new rule is "a rule that ... was not *dictated* by precedent existing at the time the defendant's conviction became final." *Saffle v. Parks*, 494 U.S. 484, 488 (1990),

3

*quoting Teague v. Lane*, 489 U.S. 288, 301 (1989)(emphasis in original). *Alleyne* announced a new rule because it explicitly overruled *Harris*.

The rule in *Crawford v. Washington,* 541 U.S. 36 (2004), interpreting the Confrontation Clause is a new rule, but does not fall within the "watershed" exception to *Teague*. *Whorton v. Bockting*, 549 U.S. 406 (2007). As of February 28, 2007, the date *Whorton* was decided, the only rule the Supreme Court has identified as qualifying under the "watershed" exception is that adopted in *Gideon v. Wainwright,* 372 U.S. 335 (1963).

> "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U. S., at 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.*, at 351-352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (citation omitted); see *Montgomery*, *supra*, at ___, 136 S. Ct. 718, 730, 193 L. Ed. 2d 599, 615). Procedural rules, by contrast, "regulate only the *manner of determining* the defendant's culpability." *Schriro*, 542 U. S., at 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442. Such rules alter "the range of permissible methods for determining whether a defendant's conduct is punishable." *Ibid*. "They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.*, at 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442.

*Welch v. United States*, 576 U.S. ___, 136 S. Ct. 1257 (2016).

Baltimore argues:

> Under the analysis in *Montgomery*, the *Alleyne* rule is a new substantive rule of law because it established that a defendant cannot be punished (in this case a mandatory life sentence) for certain primary conduct unless the facts supporting the aggravated level of punishment are submitted to a jury and proven beyond a

> reasonable doubt, regardless of whether the defendant could have
> received the same sentence with or without that fact.

(Objections, ECF No. 334, PageID 8547). When the quoted language is parsed, it facially refutes the proposition for which it is cited. *Alleyne* does not place "certain primary conduct" entirely beyond punishment, but conditions such punishment on a submitting the facts to a jury and obtaining a verdict. Thus *Alleyne* is in the line of cases beginning with *Apprendi* which impose procedural limits on imposing certain enhancements of criminal punishment. *Apprendi* itself does not apply retroactively as it is not a watershed rule of criminal procedure. *Goode v. United States*, 305 F.3d 378 (6th Cir. 2002).

Other authority holding *Alleyne* is not retroactively applicable on collateral review includes *United States v. Reyes*, 755 F.3d 210 (3rd Cir. 2014); *United States v. Redd*, 735 F.3d 91 (2nd Cir. 2013); *United States v. Hoon*, 2014 U.S. App. LEXIS 15408 (10th Cir. 2014); *In re Payne*, 733 F.3d 1027 (10th Cir. 2013); *Simpson v. United States,* 721 F.3d 875 (7th Cir. 2013); *United States v. Taylor*, 2014 U.S. Dist. LEXIS 25218 (N.D. Ohio Feb. 27, 2014) and *Eziolisa v. United States*, 2014 U.S. App. LEXIS 24769(6th Cir. Sept. 19, 2014).

**Procedural Default**

The Report also accepted the Government's procedural default defense to Ground One by finding that Baltimore's claim -- that conviction required a jury verdict and proof beyond a reasonable doubt – was available on direct appeal. Not so, say the Objections, because *Alleyne* was not decided until a year after Baltimore's conviction was affirmed (ECF No. 336, PageID 8547-48, citing Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th §

5

41.1(a)[sic; reference should be to § 41.4]. Nothing in the cited reference suggests that an argument is not available on appeal because authority supporting it has not yet been decided. Rather, Hertz & Liebman speak to the issues which cannot be raised on direct appeal because there is no record to support them, e.g. ineffective assistance of trial counsel which depends on matter outside the record. Although *Alleyne* had not yet been decided, the argument that sentence enhancements can require proof to a jury beyond a reasonable doubt had been well known to the legal community since *Apprendi* in 2000. Important arguments to extend Apprendi had been successfully made long before *Alleyne* was decided. See *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

Having reconsidered the matter in light of the Objections, the Magistrate Judge again recommends Ground One be dismissed.

**Ground Two: Ineffective Assistance of Counsel at Sentencing**

In his Second Ground for Relief, Baltimore claims he received ineffective assistance of trial counsel when his trial attorney did not object at sentencing to Judge Rice's failure to find that the Government had proved the requirements of 21 U.S.C. § 848(b)(1) by a preponderance of the evidence.[1]

---

[1] As pleaded, Ground Two also claimed ineffective assistance of trial counsel in failing to object to the jury instructions on Count Five. This part of the claim is not pursued in the Objections (ECF No. 336, PageID 8548).

6

The Report concluded that Judge Rice had made the required finding (Report, ECF No. 334, PageID 8479, 8482). The Objections assert that the Magistrate[2] read Judge Rice's findings "too generously." (Objections, ECF No. 336, PageID 8552). Judge Rice's actual language was

> The Court will rely not on those Offense Conduct paragraphs as -- rather, the Court will rely upon its independent review of the evidence adduced at trial which it has concluded not only supports the four convictions but the enhancements, the enhancements by a preponderance or greater weight of the evidence -- the elements of the offenses by proof beyond a reasonable doubt.

(Transcript, ECF No. 265, PageID 5793.) Baltimore argues in the Objections that this language applies only to the enhancements recommended in the Presentence Investigation Report and not the further enhancement applicable to find that Baltimore was the principal administrator, organizer, or leader of the criminal enterprise (ECF No. 336, PageID 8552).

In the Report, the Magistrate Judge concluded there was no authority cited that required a trial judge to make the enhancement finding by using particular language (ECF No. 334, PageID 8479). There is no question that the relevant enhancement was pleaded in the indictment. Judge Rice made no distinction in his finding between the enhancements recommended in the PSR and those pleaded in the indictment; the word he used – "enhancements" – encompasses both.

It must be remembered that this Ground for Relief is not about trial court error, not about claiming Judge Rice erred in not making the finding. If that were the claim, it would be procedurally defaulted because it was not raised on appeal. On the contrary, the claim is that Mr. Lehmkuhl provided ineffective assistance when he did not hear the word "enhancements" as

---

[2] The Objections use the title "Magistrate" throughout. The title of the office was changed to "Magistrate Judge" in 1991. The Magistrate Judge corps generally is grateful to the Federal Bar Association for its recent efforts to correct the mistake of using only "Magistrate." Since the author of the Objections was President of the local chapter of the FBA which was named "Chapter of the Year" in 2016-17, one would have thought he would have avoided this misnomer.

7

limited to the enhancements recommended in the PSR and object. Of course, if he had objected and Judge Rice intended to include all the enhancements, the judge could merely have made the record more explicit. That is of course the reason for the contemporaneous objection rule, to permit a trial court to correct its mistakes. But the Magistrate Judge cannot conclude on the basis of the record that it was ineffective assistance of trial counsel to fail to hear the supposed ambiguity in the oral finding.

Ground Two should therefore be dismissed.

**Ground Three: Ineffective Assistance of Trial Counsel in Plea Negotiations**

In his Third Ground for Relief, Baltimore asserts he received ineffective assistance of trial counsel during plea negotiations. He alleges Mr. Lehmkuhl provided ineffective assistance in urging him to reject a favorable plea offer and wrongly advising him that the findings required by 21 U.S.C. § 848(b) are elements required to be proved to the jury.

The Report found against Baltimore on both branches of the *Strickland* standard – deficient performance and prejudice. With respect to the deficient performance prong, the Objections discuss at length four separate instances of asserted deficient performance. Three of the alleged deficient performances relate to letters Mr. Lehmkuhl wrote to Baltimore on September 1, 2009; the fourth relates to "several written and oral comments regarding the strength of the defense or the weaknesses of the government's case." (Objections, ECF No. 336, PageID 8521.)

Regarding the September 1, 2009, letters, the Report concluded "Mr. Baltimore's present counsel has made as strong a case as the facts will bear that the September 1, 2009, letters are

incomplete and might be misunderstood by a lay criminal defendant." (ECF No. 334, PageID 8488-89.) The Objections parse the letters at considerable depth and contrast their words with Baltimore's post-hoc reconstruction, during the evidentiary hearing, of how the words somehow misled him into rejecting the plea offer of a seventeen-year sentence.

The Magistrate Judge found Baltimore not to be a credible witness on his willingness to accept a plea bargain. The reasons for that finding are set out at length in the Report (ECF No. 334, PageID 8489-91). The Objections note the Report's focus on the prejudice branch of the *Strickland* standard and observed "the Magistrate reach this determination [lack of prejudice] without addressing any of the case law cited by Baltimore to support his claims of prejudice." (Objections, ECF No. 336, PageID 8538).

Authority relied on in the Objections comprises *Sawaf v. United States*, 570 Fed. Appx. 544 (6th Cir. 2014); *Christopher v. United States*, 605 Fed. Appx. 533 (6th Cir. 2015); and *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003). These case support the proposition for which they are cited, to wit, that a substantial disparity between the sentence offered in the plea agreement and the sentence actually imposed after trial supports a presumption of prejudice from any deficient performance by counsel.

While the case law supports a presumption of prejudice arising from disparate sentencing possibilities, several distinctions of those cases from this one are important. First, *Sawaf* and *Christopher* are not published decisions and therefore are not binding precedent. "Unpublished opinions are never controlling authority." *Fonseca v. CONRAIL*, 246 F.3d 585, 591 (6th Cir. Ohio 2001), 6th Cir. R. 28(g); *Salamalekis v. Commissioner of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir. 2000); *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007); *TriHealth, Inc., v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 789 (6th Cir. 2005).

9

Second, in *Christopher* the district court denied an evidentiary hearing and made no finding of fact, so that appellate review was *de novo*. Here, in contrast, a hearing was held at which Mr. Baltimore testified, giving the Magistrate Judge the opportunity to assess his credibility in the classic way. In *Sawaf*, defense counsel completely failed to advise the defendant of possible sentences and the disparity between the sentence imposed and that offered in the plea bargain was five-to-one. Here the disparity was between a seventeen-year sentence and life imprisonment, which, given Baltimore's age at the time of sentencing, would probably have been just double that. In *Griffin*, the only published decision cited, the Sixth Circuit did not grant relief on the merits, but remanded for an evidentiary hearing. While the cited cases recognize a presumption of prejudice when there is substantial sentence disparity, they do not make that presumption irrebuttable.

At the time of trial, determination of whether a person convicted on a CCE count was the "principal administrator, organizer, or leader of the enterprise" was a sentencing enhancement factor to be decided by the trial judge after verdict on a preponderance of the evidence standard. *Harris, supra,* overruled by *Alleyne, supra*. Baltimore claims that if he had known Judge Rice, instead of the jury, would be deciding this principal administrator fact, he would have taken the plea agreement for seventeen years because he felt Judge Rice did not "like" him. The Magistrate Judge finds this particular statement incredible as proof he would have taken the plea.

Whether a judge likes or dislikes a litigant is supposed to be completely immaterial to that judge's decision. Our oath requires us to administer justice according to law and without respect to persons. He offers no evidence that Judge Rice was likely to violate that oath.

He also offers no evidence Judge Rice was likely to weigh the evidence on this principal administrator fact differently from a jury. He offers no explanation of why a jury was more

likely to decide this fact in his favor than a seasoned trial judge. (Do lay juries who may try one of these cases in a lifetime "like" major drug dealers more than seasoned trial judges who are trained to weigh facts carefully regardless of the character of the crime?)

Baltimore's evidence that Judge Rice did not "like" him is that (1) on his attempt to have Mr. Lehmkuhl replaced after the judge had already replaced Aaron Durden, Judge Rice said "I don't think you'd be happy with F. Lee Bailey" and (2) despite being represented by counsel, Baltimore had filed numerous pro se motions (Defendant's Brief, ECF No. 329, PageID 8420). These facts utterly fail to prove Judge Rice had any bias against Baltimore.

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.

*Liteky v. United States,* 510 U.S. 540, 554-55 (1994). Of course a defendant's belief that a judge does not like him does not rise to the level of a claim of bias, but Baltimore's assertion must mean that he believed Judge Rice was biased against him, that Judge Rice would decide the "principal administrator" question on a basis other than the law and the facts.

Baltimore's credibility is also undercut by other evidence of his unwillingness to plead guilty. In September 2009 he rejected a plea deal for twenty years, saying he would not agree to anything more than ten years (Report, ECF No. 334, PageID 8490). At the same time he filed a *pro se* motion to dismiss for lack of speedy trial in which he said he was eager to go to trial, corroborating Mr. Lehmkuhl's testimony that he had always "set his sights on going to trial." *Id.*

The Report also concluded Baltimore could not have accepted the plea agreement because he was unwilling to admit facts necessary to finding a factual basis for guilt, an

11

unwillingness repeated at the evidentiary hearing (ECF No. 334, PageID 8490-91). The Objections respond with a conclusory statement about Baltimore's willingness to plea to Counts 1 and 3 and his unequivocal "no" to the leading question of whether he would lie to get out of his life sentence (ECF No. 336, PageID 8544). The Court is not obliged to believe answers just because they are unequivocal. Baltimore's asserted veracity now must be weighed against his conviction by a jury of being an organizer of a continuing major drug enterprise. While the Sixth Circuit in two of the cited cases found that continued protests of innocence were not incompatible with believing the defendant would have accepted a plea bargain, this judicial officer does not believe Mr. Baltimore's asserted willingness to plead in light of his unwillingness, even at the evidentiary hearing, to admit facts necessary to making the plea bargain acceptable.

For these reasons, it is again respectfully recommended that the Third Ground for Relief be dismissed.

**Ground Six: Ineffective Assistance of Counsel in Not Objecting to Jury Instructions**

In his Sixth Ground for Relief, Mr. Baltimore claims he received ineffective assistance of trial counsel when Mr. Lehmkuhl did not object to erroneous jury instructions on Count 3 (Amended Motion, ECF No. 299, PageID 6634-35). The jury instructions as given on Count 3 are set out verbatim in the Report (ECF No. 334, PageID 8496-8501, quoting ECF No. 222, PageID 1132-41).

As the Report found, the instructions covered all three possible theories on which a person could be found guilty of the crime charged in Count 3, possession of a firearm in

furtherance of a drug conspiracy. Because Baltimore could not have been found guilty as a principal, the portion of the instructions discussing that theory is surplusage. Mr. Lehmkuhl did not object, but the Report opined that could have been appropriate trial strategy because the jury would have seen the Government had no evidence on the liable-as-principal theory (ECF No. 334, PageID 8502-03.) Regarding the *Pinkerton* theory of liability, the Report distinguished the case law relied on by Defendant. *Id.* at PageID 8503.

In his Objections, Baltimore argues the verdict form on Count 3 did not require the jury to choose which theory it relied on (Objections, ECF No. 336, PageID 8558). Although this was pleaded as part of the Amended Motion (ECF No. 299, PageID 6515), no evidence was presented on this question and it was not briefed (See ECF No. 329). Baltimore presents no authority requiring a special verdict form that forces a jury to choose among the theories presented by the Government. And no claim about the verdict form itself was raised on appeal.

Baltimore also argues the jury instruction on Count 3, taken as a whole, "was confusing, misleading, and prejudicial . . ." (ECF No. 336, PageID 8558, repeated at PageID 8559). This, again, is a claim which could have been but was not raised on direct appeal and is therefore procedurally defaulted.

Having argued at length the purported errors in the instructions, Baltimore asserts in conclusory fashion that it was ineffective assistance of trial counsel for Mr. Lehmkuhl not to object (ECF No. 336, PageID 8562). The Objections take no account of the Report's conclusion that failure to object could have been good trial tactics since the Government plainly presented no evidence on the principal theory of liability.

It is therefore again respectfully recommended that Ground Six be dismissed.

**Certificate of Appealability**

The Report recommended that the Court deny a certificate of appealability because reasonable jurists would not disagree with its conclusion that the Amended Motion should be dismissed with prejudice.

In objecting to this conclusion and the further recommendation that the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*, Baltimore relies on recent Supreme Court authority, *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 197 L. Ed. 2d 1 (2017).

In *Buck* the Supreme Court criticized the circuit court of appeals for reaching the mertis of a habeas claim before deciding the certificate of appealaiblity, noting that that amounts to assuming jurisdiction, which federal courts may not do.

The requirement of a certificate of appealability for appellate review was imposed by Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). Although the statute on its face imposes the certificate of appealability determination on the courts of appeals, they quickly "delegated" that function to the district courts in the first instance. They held district courts have the power to issue certificates of appealability under the AEDPA. *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063 (6th Cir. 1997); *Hunter v. United States*, 101 F.3d 1565 (11th Cir. 1996)(en banc). Likewise, district courts are to be the initial decisionmakers on certificates of appealability under §2255. *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997)(adopting analysis in *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997).

The Supreme Court acquiesced in this delegation by adopting, in 2009, Rule 11 of the Rules Governing § 2255 Proceedings which requires a district court grant or deny a certificate "when it enters a final order adverse to the applicant." Thus in contrast to the order of proceeding in the appellate court emphasized in *Buck*, a district court must consider the merits first, and then the question whether any of its conclusions are debatable among jurists of reason. District courts derive their jurisdiction to consider § 2255 motions directly from that statute. It is only courts of appeals who lack jurisdiction to consider the merits of a § 2254 or 2255 application without a certificate of appealability.

Baltimore presents no argument in his Objections that the Magistrate Judge was wrong to conclude that reasonable jurists would not find the Report's conclusions debatable. Nevertheless, upon reconsideration, the Magistrate Judge finds the Report's conclusions on Ground Three could be debated among reasonable jurists because it depends on a credibility determination to overcome the presumption of prejudice arising (assuming *Sawaf* and *Christopher* are followed) from the disparity of sentences between the rejected plea deal and the mandatory minimum life sentence after trial. The Court should issue a certificate of appealability on that issue and otherwise deny one. Since Defendant is indigent, he should be permitted to appeal *in forma pauperis*.

November 20, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).