IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,      :

      Plaintiff,

      v.      :      Case No. 3:07-cr-173

ANTHONY BALTIMORE,      JUDGE WALTER H. RICE

      Defendant.      :

---

DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN PART UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #334) AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. #341); SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S OBJECTIONS THERETO (DOCS. ##336, 343); SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S FIRST AMENDED MOTION TO VACATE UNDER 28 U.S.C. § 2255 (DOC. #299); UNITED STATES TO RE-OFFER 17-YEAR PLEA PROPOSAL WITHIN 45 DAYS

---

This matter is currently before the Court on Petitioner Anthony Baltimore's

First Amended Motion to Vacate Under 28 U.S.C. § 2255. Doc. #299. United

States Magistrate Judge Michael R. Merz issued a Report and Recommendations,

Doc. #334, and Supplemental Report and Recommendations, Doc. #341.

Petitioner has filed Objections to both, Docs. ##336, 343.

For the reasons set forth below, the Court ADOPTS said judicial filings IN

PART and REJECTS them IN PART. Petitioner's Objections are SUSTAINED IN

PART and OVERRULED IN PART. The Court SUSTAINS IN PART and OVERRULES

IN PART Petitioner's First Amended Motion to Vacate, and ORDERS the United States to re-offer its 17-year plea proposal within 45 days of the date of this Decision and Entry.

## I.  Background and Procedural History

In the Second Superseding Indictment, Doc. #61, Petitioner Anthony Baltimore was charged with: (1) Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§846 and 841(a) and (b) ("Count I"); (2) Money Laundering, in violation of 18 U.S.C. §1956 (a)(1)(B)(i) and §2 ("Count 2"); (3) Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. §§924(c)(1)(A)(i) and 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946) ("Count 3"); (4) Conspiracy to Launder Money in violation of 18 U.S.C. § 1956(a)(1)(B)(i) ("Count 4"); and (5) Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. §§848(a),(b)(1), and (b)(2)(A) ("Count 5").

Baltimore was represented by Attorney Phillip Lehmkuhl.  Prior to trial, the United States made a plea offer involving a recommended sentence of 20 years on Counts 1 and 3.  Baltimore's counteroffer, for a stipulated sentence of 10 years, was rejected by the United States.

On September 28, 2009, the United States made another plea offer in which it would dismiss Count 5, Baltimore would plead guilty to the remaining Counts, and the United States would recommend a Rule 11(c)(1)(C) stipulated sentence of

10 years on Count 1, and 7 years on Count 3, to be served consecutively, for a total of 17 years. The United States would not oppose Baltimore's seeking entry into the 500-hour drug program in prison. This same offer was made again at a Best Case/Worst Case hearing on October 5, 2009, and on October 19, 2009, immediately prior to trial. Baltimore rejected the offer each time. *See* Joint Stipulations of Fact, Doc. #318, PageID##6684-86.

In November of 2009, following a jury trial, Baltimore was convicted on Counts 1, 3, 4, and 5. He was sentenced on February 25, 2010, to life in prison on Count 1, 60 months on Count 3, 240 months on Count 4, and mandatory life in prison on Count 5. The sentences on Counts 1, 4 and 5 were to run concurrently with each other; Count 3 was to run consecutively. He was also sentenced to 10 years of supervised release. Doc. #237.

On direct appeal, the Sixth Circuit vacated the Count I drug conspiracy conviction, finding that it was a lesser included offense of the CCE conviction on Count 5. However, the Sixth Circuit held that, given the mandatory life sentence imposed on Count 5, there was no need to remand for resentencing. *United States v. Baltimore*, 482 F. App'x 977 (6th Cir. June 26, 2012).

Baltimore exhausted his other appeals, and ultimately filed a Motion to Vacate Under 28 U.S.C. §2255, Doc. #292. His First Amended Motion to Vacate Under 28 U.S.C. § 2255, Doc. #299, asserts the following six Grounds for Relief:

**First Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BECAUSE HE WAS CONVICTED AND SENTENCED TO A MANDATORY LIFE SENTENCE UNDER COUNT 5 OF THE INDICTMENT FOR VIOLATING THE CONTINUING CRIMINAL ENTERPRISE STATUTE, 21 U.S.C. §§ 848(a), (b)(1), and (b)(2)(A), WITHOUT THE JURY OR THE COURT DETERMINING THAT HE WAS "THE PRINCIPAL ADMINISTRATOR, ORGANIZER, OR LEADER OF THE ENTERPRISE" UNDER § 848(b)(1).

**Second Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR REASONS INCLUDING BUT NOT LIMITED TO FAILING TO OBJECT TO THE JURY INSTRUCTIONS RELATED TO COUNT 5 ON THE GROUND THAT THEY DID NOT INCLUDE APPROPRIATE INSTRUCTIONS CONCERNING § 848(b)(1) AND FAILING TO OBJECT TO THE COURT'S SENTENCE OF MANDATORY LIFE IN PRISON ON COUNT 5 EVEN THOUGH THE COURT FAILED TO MAKE A DETERMINATION THAT THE GOVERNMENT HAD PROVEN THE REQUISITES OF § 848(b)(1) BY A PREPONDERANCE OF THE EVIDENCE.

**Third Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR REASONS INCLUDING BUT NOT LIMITED TO ERRONEOUSLY ENCOURAGING MR. BALTIMORE TO REJECT A FAVORABLE PLEA OFFER AND PROCEED TO TRIAL BY CLAIMING THAT THE CASE WAS WINNABLE AND THAT HE HAD AN EXCELLENT CHANCE OF PREVAILING AT TRIAL AND BY WRONGLY INFORMING MR. BALTIMORE THAT BOTH OF THE EVIDENTIARY REQUIREMENTS SET FORTH IN 21 U.S.C. § 848(b) ARE ELEMENTS OF THE CCE OFFENSE IN COUNT 5 THAT HAVE TO BE DECIDED BY A JURY BEYOND A REASONABLE DOUBT.

**Fourth Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BECAUSE HE FAILED TO MOVE THE COURT UNDER RULES 12(b) OR 29 TO STRIKE OVERT ACT 12 OF COUNT 4 AND OVERT ACT 21 OF COUNT 1 (INCORPORATED INTO COUNT 5) OR OTHERWISE FAILED TO REQUEST THAT THE COURT DISMISS COUNTS 4 AND 5 ON THE GROUND THAT ONCE THESE OVERT ACTS WERE PROPERLY EXCLUDED, THE GOVERNMENT WAS BARRED FROM PROCEEDING ON COUNTS 4 AND 5 OF THE INDICTMENT BY THE FIVE-YEAR STATUTE OF LIMITATIONS, AND [THOSE RIGHTS] WERE VIOLATED BY APPELLATE COUNSEL BECAUSE HE, TOO, FAILED TO CHALLENGE THESE OVERT ACTS AND THE CORRESPONDING COUNTS OF THE INDICTMENT ON STATUTE OF LIMITATIONS GROUNDS.

**Fifth Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BECAUSE THE JURY WAS INSTRUCTED AS PART OF THE ESSENTIAL ELEMENTS OF THE FIREARM OFFENSE (COUNT 3) THAT IT COULD FIND MR. BALTIMORE GUILTY IN THREE DIFFERENT WAYS, BUT TWO OF THE THREE WAYS--AS A PRINCIPAL OR UNDER A THEORY OF *PINKERTON* LIABILITY—WERE ERRONEOUS, AND THE VERDICT FORM FOR COUNT 3 DID NOT REQUIRE THE JURY TO SPECIFY THE BASIS FOR CONVICTION, MEANING THAT THE JURY LIKELY CONVICTED MR. BALTIMORE ON THE BASIS OF THE ERRONEOUS PORTIONS OF THE JURY INSTRUCTION.

**Sixth Ground for Relief**

MR. BALTIMORE'S RIGHTS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION WERE VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BECAUSE HE FAILED TO OBJECT TO THE ERRONEOUS PORTIONS OF THE JURY INSTRUCTION ADDRESSING THE ESSENTIAL ELEMENTS OF COUNT 3.

Doc. #299.

After the First Amended Motion to Vacate was fully briefed, Docs. ##299, 301, 302, Magistrate Judge Merz held an evidentiary hearing, the amended redacted transcript of which is filed at Doc. #328. The parties then filed post-hearing briefs, Docs. ##329, 333.

In his Report and Recommendations, Magistrate Judge Merz recommended that the Court dismiss the § 2255 Motion to Vacate with prejudice, and deny a certificate of appealability and leave to proceed *in forma pauperis.* Doc. #334. After Baltimore filed Objections, Doc. #336, the Court recommitted the matter to Magistrate Judge Merz, who then issued a Supplemental Report and Recommendations, Doc. #341. He again recommended overruling the Motion to Vacate, but this time recommended that the Court grant a Certificate of Appealability on the Third Ground for Relief, and allow Baltimore to appeal *in forma pauperis*. Baltimore has filed Objections to the Supplemental Report and Recommendations, Doc. #343. The United States filed no responses to Baltimore's Objections to either judicial filing.

## II.    Standard of Review

Under Fed. R. Civ. P. 72(b)(3), the district court must make a *de novo* review of any portions of the Reports and Recommendations to which proper Objections have been filed. *See also* 28 U.S.C. § 636(b)(1).

6

III.    **Analysis**

A prisoner in federal custody may file a motion to vacate, set aside or correct the sentence when the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

Here, Baltimore asserts Six Grounds for Relief. Given that the Court finds that the Third Ground for Relief is dispositive, the Court begins there. It will then briefly address the other Grounds asserted.

A.    **Third Ground for Relief**

Baltimore argues that his Fifth and Sixth Amendment rights were violated by ineffective assistance of trial counsel at the plea-bargaining stage. He argues that his attorney, Phillip Lehmkuhl, gave him faulty advice about the elements of Count 5 (the Continuing Criminal Enterprise, or "CCE" charge), and about the theories of liability available under Count 3 (the charge for Possession of a Firearm in Furtherance of a Drug Trafficking Crime). He further argues that his attorney gave him faulty advice about the strengths and weaknesses of the case against him, and led him to believe that he could win. Baltimore maintains that, based on his counsel's faulty legal advice, he rejected the United States' 17-year plea offer.

In order to succeed on his claim of ineffective assistance of counsel, Baltimore must prove that: (1) counsel's performance was constitutionally deficient; and (2) the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Magistrate Judge Merz found that Baltimore failed to satisfy both prongs of *Strickland.* He nevertheless recommended that the Court grant a certificate of appealability as to this Third Ground for Relief.

Baltimore has objected to the Magistrate Judge's recommendations concerning the merits of this claim. For the reasons discussed below, the Court SUSTAINS Baltimore's Objections with respect to the Third Ground for Relief. To the extent that the Report and Recommendations, and Supplemental Report and Recommendations, urge dismissal of the Third Ground for Relief, the Court REJECTS those judicial filings.

### 1. Deficient Performance

As noted above, Baltimore maintains that Mr. Lehmkuhl's performance was deficient in several respects. "[A] criminal defendant is entitled to competent advice of counsel in plea negotiations." *United States v. Morris*, 470 F.3d 596, 600 (6th Cir. 2006) (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)). In *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003), the court held that "[a] criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing

8

exposure the defendant will face as a consequence of exercising each of the options available." For the reasons set forth below, the Court finds that Baltimore has satisfied the "deficient performance" prong of the *Strickland* analysis.

### a. Count 5 (CCE): § 848(b)(1)

Count 5 of the Second Superseding Indictment charged Baltimore with a violation of 21 U.S.C. § 848, the Continuing Criminal Enterprise ("CCE") statute. It reads in relevant part, as follows:

*(a) Penalties; forfeitures*
Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment . . . ; except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 30 years and which may be up to life imprisonment . . .

*(b) Life imprisonment for engaging in continuing criminal enterprise*
Any person who engages in a continuing criminal enterprise shall be imprisoned for life . . . if--
(1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and
(2)(A) the violation referred to in subsection (c)(1) involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title . . .

*(c) "Continuing criminal enterprise" defined*
For purposes of subsection (a), a person is engaged in a continuing criminal enterprise if--
(1) he violates any provision of this subchapter or subchapter II the punishment for which is a felony, and
(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II--
(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a

position of organizer, a supervisory position, or any other position of management, and
     (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848.

At the time that Baltimore was convicted and sentenced, subsection (b) of this statute, which mandates life imprisonment, was considered to be a sentencing factor, not an element of the crime. The prerequisites, set forth in 21 U.S.C. §§848(b)(1) and (2), were to be determined by the judge by a preponderance of the evidence. *Harris v. United States*, 536 U.S. 545, 560, 568 (2002). A few years later, *Harris* was overruled by *Alleyne v. United States*, 570 U.S. 99 (2013), which held that any fact that increases a mandatory minimum sentence is an element of the crime and must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 103.[1]

On September 1, 2009, the month before trial was set to begin, Mr. Lehmkuhl wrote a letter to Baltimore concerning what the Government must prove to prevail on the CCE charge. With respect to 21 U.S.C. § 848(b), the life imprisonment subsection, Lehmkuhl wrote:

> In paragraph (b)(1) the Government alleges that you were in fact the principal administrator, organizer or leader of a Criminal Enterprise involving 5 or more subordinates, and that through such criminal enterprise you distributed at least 300 times the bulk amount of cocaine identified in 21 U.S.C. 848(b)(1)(B). If they prove 150

---

[1] As set forth *inter alia*, *Alleyne* does not apply retroactively to cases on collateral review. *See In re Mazzio*, 756 F.3d 487, 490-91 (6th Cir. 2014); *United States v. Charles*, 901 F.3d 702, 705 (6th Cir. 2018).

kilograms of cocaine were distributed they satisfy ***this element of the offense.***

     If they prove all that they must prove under paragraph (b)(1) and (b)(2), the sentence will be life in prison.

Doc. #299-1, PageID#6538 (emphasis added).

On the second page of the letter, Lehmkuhl sets out the purported "essential elements" of a CCE charge. He includes "[t]he (single) enterprise distributed 300 times the bulk amount of cocaine" as the second *element* of the offense. *Id.* at PageID#6539.

The Government correctly points out that Lehmkuhl does not identify whether it is the judge or the jury who must determine: (1) that Baltimore is the principal administrator, organizer or leader of the enterprise; and (2) that he distributed the requisite quantity of cocaine. Nor does Lehmkuhl state whether such findings must be made beyond a reasonable doubt or by a preponderance of the evidence.

Nevertheless, Lehmkuhl twice refers to the factors in 21 U.S.C. §848(b)(1) as "elements of the offense." This was plainly incorrect. At that time, the factors set forth in §848(b)(1) were sentencing factors. Whereas an "element" must be presented to the jury and proven beyond a reasonable doubt, the applicability of a "sentencing factor" was determined by the judge and needed to be proven only by a preponderance of the evidence. Lehmkuhl's failure to distinguish between the two in his letter to Baltimore renders his performance constitutionally deficient.

11

### b. Count 5 (CCE): § 848(c)(2)(A)

Baltimore also alleges that Lehmkuhl incorrectly instructed him on the elements of 21 U.S.C. §848(c)(2)(A). Lehmkuhl's September 1, 2009, letter to Baltimore states that "the focus of our defense to this charge will be that no single conspiracy ever existed involving 5 or more persons, and at no time did you have 5 or more subordinates engaged in helping you sell cocaine." Doc. #299-1, PageID#6539.

Lehmkuhl admitted at the evidentiary hearing that his understanding of what the Government was required to prove was inconsistent with the jury instructions given at trial. The jury was instructed that the Government need not prove that there was a single conspiracy involving five or more persons, or that Baltimore supervised five or more persons at the same time. Doc. #328, PageID#8208-15. The Court further notes that, even though the jury instructions were inconsistent with what Mr. Lehmkuhl had told Mr. Baltimore, Lehmkuhl made no objection to the proposed jury instruction at the charging conference. Doc. #262, PageID#5502.

The Court finds that Mr. Lehmkuhl's misunderstanding of the law as it related to 21 U.S.C. § 848(c)(2)(A) renders his performance constitutionally deficient.

### c. Count 3: "Aider and Abettor" Liability

12

Mr. Lehmkuhl sent a second letter to Mr. Baltimore on September 1, 2009. This letter concerned Count 3, the charge for Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §§924(c)(1)(A)(i) and 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).  This charge stemmed from a shooting incident that occurred on October 27, 2002, in which one unnamed coconspirator, Tremaine Norman, shot a second unnamed coconspirator, Rodney Harris, in Dayton, Ohio.

The Government could not hold Baltimore responsible as a principal, given that he was in Indianapolis on that date.  Instead, it sought to hold him liable under 18 U.S.C. §924(c)(1)(A)(i) under the *Pinkerton* theory of liability, in which the criminal conduct of one coconspirator is attributable to all coconspirators if the offense is committed in furtherance of the conspiracy and it was reasonably foreseeable as a necessary or natural consequence of the unlawful agreement. *Pinkerton*, 328 U.S. at 647-48.  In the alternative, the Government sought to hold Baltimore liable as an aider and abettor under 18 U.S.C. §2.

Mr. Lehmkuhl's letter to Mr. Baltimore discusses only liability as a principal, and *Pinkerton* liability.  It makes no mention of the fact that Baltimore was also charged under the aiding and abetting statute, 18 U.S.C. §2.  Doc. #299-2.  At the evidentiary hearing, Lehmkuhl admitted that he did not discuss 18 U.S.C. § 2 in his letter, and he did not remember if he ever told Baltimore that he could also be convicted on Count 3 as an aider and abettor.  Doc. #328, PageID#8225.

13

The Court finds that Mr. Lehmkuhl's oversight concerning the fact that Baltimore was also charged in Count 3 under the aiding and abetting statute, 18 U.S.C. § 2, rises to the level of constitutionally deficient performance.

### d.    Erroneous, misleading statements

Baltimore also argues that Mr. Lehmkuhl made other misleading statements concerning the strengths and weaknesses of the case. For example, in his September 1, 2009, letter on Count 5, he stated that "21 USC 848 is difficult for the Government to prove, which is why it is rarely attempted." Doc. #299-1, PageID#6538. In his other letter, as to Count 3, Lehmkuhl stated "I suspect that the Government will have difficulty proving the 'in furtherance' element of the offense." Doc. #299-2, PageID#6541. When questioned about the basis for this statement, Lehmkuhl testified that he could not remember. Doc. #328, PageID#8229.

Baltimore testified at the evidentiary hearing that Lehmkuhl told him that his case was winnable, that he was excited about going to trial, and that Judge Rice had been his teacher and often called him in to troubleshoot on difficult cases. *Id.* at PageID#8330. Baltimore's friend, Shevel Hinton, also testified at the evidentiary hearing. She claims that Lehmkuhl told her that the Government had offered a plea deal, but that he did not know why Baltimore would accept it. He believed that the Government's case was weak, "like a no brainer type thing." *Id.* at PageID##8280-81.

Lehmkuhl, however, denied telling Baltimore that the case was winnable. Rather, he told him that the case against him was "quite strong."  The trial strategy was to argue that Baltimore had abandoned the conspiracy more than five years before he was indicted; however, this was an affirmative defense on which he would bear the burden of proof.  He allegedly advised Baltimore to accept the 17-year plea offer.  *Id.* at PageID##8237-38.  Lehmkuhl also denied talking to Hinton about the plea offer or the merits of the case.  *Id.* at PageID##8246-47.

Given that the Court has already found that Mr. Lehmkuhl's performance was constitutionally deficient in several other respects, the Court need not address these miscellaneous claims on which there is conflicting evidence, and it chooses not to do so.

### 2.    Prejudice

Having determined that Mr. Lehmkuhl's performance was constitutionally deficient, the Court next turns to the second prong of the *Strickland* analysis, the prejudice prong.  In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court discussed how to analyze the prejudice prong of *Strickland* in a case alleging ineffective assistance of counsel in the plea-bargaining context.  It held that "a defendant must show the outcome of the plea process would have been different with competent advice."  *Id.* at 163.  When faulty advice has led the defendant to reject a plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164.

The Sixth Circuit has noted that, in the plea-bargaining context, if the first prong of *Strickland* has been satisfied, "the threshold showing of prejudice required to satisfy the second prong is comparatively low." *Sawaf v. United States*, 570 F. App'x 544, 547 (6th Cir. 2014). "[I]f reasonable minds could conclude that a fully informed defendant would have accepted the Government's plea offer, then the defendant is entitled to relief." *Id.*

The Sixth Circuit has also held that "[a]lthough some circuits have held that a defendant must support his own assertion that he would have accepted the offer with additional objective evidence, we in this circuit have declined to adopt such a requirement." *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (quoting *Dedvukovic v. Martin*, 36 F. App'x 795, 798 (6th Cir. 2002)). *See also Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Griffin* for this proposition).[2]

---

[2] As discussed in greater detail below, even though additional objective evidence is not required, it does exist in this case in the form of the faulty advice contained in Lehmkuhl's letters and the significant, critical advice omitted from those letters, upon both of which Baltimore relied, as well as Baltimore's expressed willingness, before trial, to make a counteroffer of ten years.

Moreover, a large disparity between the sentence offered in the plea deal and the sentence actually received is "strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, despite earlier protestations of innocence." *Id.* at 552. *See also Magana v. Hofbauer*, 263 F.3d 542, 551-52 (6th Cir. 2001) (citing a large disparity as an objective factor in determining that there was "at least a *reasonable probability* that Magana would have accepted the plea offer had he known his true sentencing exposure"); *Griffin*, 330 F.3d at 737 (quoting *Dedvukovic*, 36 F. App'x at 798) ("a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer"); *United States v. Morris*, 470 F.3d 596, 602 (6th Cir. 2006) ("This Court has given special weight to significant disparities between penalties offered in a plea and penalties of a potential sentence in determining whether a defendant suffered prejudice by not accepting a plea offer."). A large disparity of this type creates a rebuttable presumption of prejudice. *Johnson v. Genovese*, 924 F.3d 929, 940 (6th Cir. 2019) (citing *Sawaf*, 570 F. App'x at 548).

In this case, there is a great disparity between the 17-year sentence offered by the Government and the sentence actually imposed, a sentence of life in prison

plus 60 months.[3]  Accordingly, the presumption of prejudice applies.  The question then becomes whether the United States has rebutted that presumption.

At the evidentiary hearing, Mr. Baltimore testified that, had he been given proper legal advice, he would have accepted the latest plea offer, agreeing to plead guilty to Counts 1 and 3 in exchange for a recommended sentence of 17 years.  He repeatedly explained that Mr. Lehmkuhl's letters greatly influenced his decision to reject that plea offer.  Doc. #328, PageID##8310, 8321, 8325, 8327, 8330, 8378.

With respect to Count 5, the CCE charge, Baltimore testified that Lehmkuhl's September 1, 2009, letter led him to believe that it was unlikely that he would be convicted on that charge.  *Id.* at PageID##8314-15, 8357-58.  He also testified that he would not have risked a mandatory life sentence if Lehmkuhl had told him that he did not think the case was winnable.  *Id.* at PageID#8324.  However, Lehmkuhl made Baltimore feel confident that he could prevail.  *Id.* at PageID#8330.

As previously noted, Lehmkuhl told Baltimore that "the focus of our defense will be that no single conspiracy ever existed involving 5 or more persons, and at no time did you have 5 or more subordinates engaged in helping you sell cocaine."  Doc. #299-1, PageID#6539.  Given that the Government need not prove that there was a single conspiracy involving five or more persons, or that Baltimore supervised five or more people at any one time, this purported

_____

[3]  Mr. Baltimore was approximately 40 years old at the time of sentencing.  Doc. #328, PageID#8257.

"defense" to Count 5 was meritless, but Baltimore did not know that. He testified that, because he had never managed five or people at any one time, he believed that this was a "very strong defense" to Count 5. Doc. #328, PageID#8316. Baltimore testified that had he been properly advised, he would have taken the plea offer, because it would have been fairly easy to prove that he had supervised at least five people over the course of the ten or so years that he was involved in drug trafficking activity. *Id.* at PageID#8336.

Lehmkuhl's characterization of § 848(b)(1)'s requirement that Baltimore be "the principal administrator, organizer, or leader of the enterprise" as an "element" of the offense also influenced Baltimore's decision to reject the plea offer. At that time, Baltimore understood the term "element" to be "what the Government has to prove and the *jury* has to find *beyond a reasonable doubt*." *Id.* at PageID##8311-12 (emphasis added). It was only after Baltimore was convicted and sentenced that he learned that this was not an "element" of the crime, but a sentencing factor to be determined by the judge by a preponderance of the evidence. *Id.* at PageID##8313-14, 8367, 8401-02.

Baltimore testified that, had he known this prior to trial, he would have accepted the plea offer. At that time, Baltimore believed that the undersigned judge did not like him. He testified, "I would not have put my life, my life in the hands of Judge Rice at that time. There's no way." *Id.* at PageID#8334-35, 8406. In essence, Baltimore felt that the identity of the factfinder and the applicable

19

burden of proof were critical in determining whether to risk a life sentence following trial as opposed to accepting a plea agreement for a far lesser sentence.

Lehmkuhl also led Baltimore to believe that he could prevail on Count 3, the charge of Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Baltimore testified that Lehmkuhl hired a private investigator to prove that Baltimore was in Indianapolis on the day of the shooting and therefore could not be liable as a principal. *Id.* at PageID#8332. Although Lehmkuhl also explained the *Pinkerton* theory of liability, he opined that the Government would have difficulty proving the "in furtherance of drug trafficking" element of the offense. This made Baltimore believe that there was a good chance that he would be acquitted on this charge. *Id.* at PageID##8318-20.

At no time did Lehmkuhl explain to Baltimore that he was also charged as an aider and abettor. *Id.* at PageID#8319-20. Baltimore testified that, had he known this, he "absolutely" would have taken the plea offer because "the evidence needed to convict me of that was, was not difficult." *Id.* at PageID##8337-38.

Magistrate Judge Merz, who conducted the evidentiary hearing, found that Baltimore was not a credible witness. Doc. #334, PageID#8489. He noted that Baltimore had fired his first attorney, who was unwilling to try the case, and Baltimore had discussed his "eagerness to proceed to trial." *Id.* at PageID#8490. Baltimore repeatedly turned down plea offers that would have resulted in sentences of 20 years and 17 years. *See* Doc. #318. Moreover, Baltimore had

consistently argued that certain overt acts set forth in Counts 1 and 5 of the Indictment were outside the five-year statute of limitations, rendering the Indictment unlawful. He was unwilling to admit to facts necessary to place his involvement in the alleged conspiracies within the statute of limitations.

The Magistrate Judge also disbelieved Baltimore's statement that he would have accepted the plea offer had he known that the undersigned would be making the factual findings necessary to trigger the mandatory life imprisonment sentence on Count 5. As to Count 3, Magistrate Judge Merz noted that Baltimore continued to deny any involvement in the Harris shooting. Doc. #328, PageID##8389-91. He reasoned that, if Baltimore now agreed to admit the facts necessary to plead guilty to Count 3, he would be caught in perjury.

Normally, the Court would give significant weight to Magistrate Judge Merz's credibility finding. Here, however, reviewing this portion of the Report and Recommendations *de novo*, the Court concludes that the credibility finding is simply not warranted.

The Sixth Circuit has held that a defendant's "repeated declarations of innocence do not prove . . . that he would not have accepted a guilty plea." *Griffin*, 330 F.3d at 738. So as not to impinge on the Fifth Amendment right against self-incrimination, "a defendant must be entitled to maintain his innocence throughout trial." *Id. See also Morris*, 470 F.3d at 603 ("factoring in Morris's assertion of his innocence would inappropriately punish him for exercising his Fifth Amendment right against self incrimination."); *Sawaf*, 570 F.

App'x at 549 ("Sawaf's claim that he is innocent does not conclusively establish that there is no 'reasonable probability' that his decision would have been different if he had been adequately informed.").

Baltimore, even at the evidentiary hearing, continued to dispute certain facts seemingly necessary to support a guilty plea. This does not mean, however, that he is unable to show that there is a reasonable probability that he would have accepted the 17-year plea offer had he been given proper legal advice. At the hearing, Baltimore was unequivocal in his testimony that, had Lehmkuhl given him correct legal advice, he would have accepted the 17-year plea deal. *See Sawaf*, 570 F. App'x at 549 (granting relief under § 2255 despite the fact that Sawaf continued to maintain his innocence even at the evidentiary hearing, where Sawaf was "unequivocal in stating that he would have pleaded guilty if he had been adequately informed of the risks involved with proceeding to trial.").

The Court notes that Mr. Lehmkuhl testified that Baltimore rejected the 20-year and 17-year plea deals, not because he was innocent of the charges, but because he was not willing to surrender that many years of his life. "Fundamentally, the price was too high." Doc. #328, PageID##8251-52. Baltimore, however, was "willing to plead guilty for the right number of years." *Id.* at PageID#8267. The sincerity of Lehmkuhl's statement is fully demonstrated by the fact that Baltimore did, in fact, make a counteroffer, agreeing to plead guilty on Count 1 in exchange for a recommended sentence of 10 years. Doc. #318. Baltimore testified that he did commit "some crimes" and was willing to

serve 10 years "and get this behind me." Doc. #328, PageID##8323. "I never denied that I was a drug dealer or a criminal. I broke the law. I readily admit that." Based on what Mr. Lehmkuhl had told him, however, he believed that 17 years was too much. *Id.* at PageID##8357.

As to Count 3, Baltimore testified that, based on what he has learned post-sentencing, he now knows that he can be held legally responsible for Tremaine Norman's actions as a coconspirator, either under a theory of *Pinkerton* liability or as an aider and abettor. *Id.* at PageID#8392. Norman was part of the drug conspiracy and he possessed a gun. Moreover, Baltimore testified that he could foresee the shooting as part of his drug dealings, because Baltimore was "definitely doing business with Mr. Harris. . . So I was willing to plead to that." *Id.* at PageID#8391. Norman was aware that Harris had stolen drugs. *Id.* at PageID#8392. As previously noted, Baltimore also testified that, because the evidence needed to convict him as an aider and abettor "was not difficult," he would have been willing to plead guilty on Count 3. *Id.* at PageID#8338.

Given the unique facts of this case, the Court finds that Baltimore has satisfied the "comparatively low" threshold of proving that there is a reasonable probability that, but for counsel's wrong legal advice (express and omitted), he would have agreed to plead guilty to Counts 1 and 3 in exchange for a recommended sentence of 17 years. There is no reason to believe that the prosecution would have withdrawn the plea offer after it was accepted, or that the Court would have rejected it. In fact, the Court asked the United States to re-

23

articulate this plea offer both at the Best Case/Worst Case hearing, and again on the morning of the trial. Moreover, there is no question that Baltimore's convictions and aggregate sentence, under the offer's terms, would have been less severe than the judgment and sentence that were imposed. *See Lafler*, 566 U.S. at 164 (setting forth what is needed to establish prejudice). Accordingly, the Court concludes that Baltimore has satisfied the prejudice prong of *Strickland.*

### 3. Remedy

In *Lafler*, the Supreme Court held that when a plea offer was for a guilty plea to counts less serious than the ones for which a defendant was convicted after trial, "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." 566 U.S. at 171.

The plea proposal at issue called for Baltimore to plead guilty to all but Count 5 of the Second Superseding Indictment in exchange for a Rule 11(c)(1)(C) negotiated, stipulated sentence of ten years on Count 1 and a seven-year consecutive sentence on Count 3. Doc. #318. The Court acknowledges that the Sixth Circuit has vacated Baltimore's conviction on Count 1, the drug trafficking conspiracy charge. However, this was not a decision on the merits of the Count 1

24

conviction.  Rather, the Sixth Circuit vacated the conviction on Count 1 only because it was a lesser included offense of Count 5, the CCE charge.  Given that Count 5 would be dismissed as part of the plea deal, the Sixth Circuit's decision does not prevent Baltimore from now pleading guilty to Count 1.

There are other potential stumbling blocks to Baltimore pleading guilty to Count 1, but none appears to be insurmountable.  Baltimore has admitted that he engaged in a drug trafficking conspiracy.  He has argued, however, that his Indictment on this charge was unlawful because the statute of limitations on this Count is five years.  He testified at trial that he abandoned all drug trafficking activity more than five years before he was indicted.  Doc. #328, PageID##8345-54.  Baltimore told the probation officer who authored the Presentence Investigation Report the same thing.  *Id.* at PageID##8360-61.  Magistrate Judge Merz noted that, in order to plead guilty on Count 1, Baltimore would have to admit under oath that he engaged in criminal conduct that occurred within the statute of limitations.  *Id.* at PageID#8350.

The Court notes that Mr. Lehmkuhl testified that if the United States had accepted Baltimore's counteroffer of an agreed-upon sentence of ten years on Count 1, it "had to be a tight statement of facts."  *Id.* at PageID#8267.  At the evidentiary hearing, Baltimore again denied engaging in any drug trafficking activity within the statute of limitations.  He could not identify any specific activity that occurred after 2002.  He admitted, however, that, on or about December 15, 2003, he assigned ownership of a Rolex watch and several cars to an attorney in

25

California, alleged as the 21st overt act in Count 1 of the Second Superseding Indictment. Baltimore indicated that, to the extent that the United States argued that this overt act was part of the drug conspiracy and that it occurred within the statute of limitations, he would be willing to admit that he engaged in this conduct. *Id.* at PageID##8395-97.

With respect to Count 3, although Baltimore continues to maintain that he was not involved in the shooting of Rodney Harris by Tremaine Norman, he now admits that, because Norman was part of the drug trafficking conspiracy, Norman's conduct could be attributable to him either under a theory of *Pinkerton* liability or as an aider and abettor. *Id.* at PageID##8389-93. He is, therefore, willing to plead guilty to Count 3.

As in *Lafler*, the Court believes that in order to remedy the constitutional injury suffered by Baltimore as a result of ineffective assistance of counsel in the plea-bargaining process, and to place him back in the position he was in prior to rejecting the 17-year plea offer, the Court must require the United States to reoffer that same plea deal. Within 45 days of the date of this Decision and Entry, the United States shall offer Mr. Baltimore the same 17-year plea proposal that he rejected immediately before trial. There is one important caveat. Given that Baltimore was acquitted on Count 2, the money laundering charge, the Court will not accept any plea offer that now requires him to plead guilty to Count 2.

Presuming the parties can agree on a Statement of Facts, and that Baltimore accepts this offer, as he has stated he would, the Court must then

determine whether to: (1) vacate the convictions and resentence him pursuant to the plea agreement; (2) vacate only some of the convictions and resentence him accordingly; or (3) leave the convictions and sentence from the trial undisturbed. *See Lafler*, 566 U.S. at 174.

Although the Court's ruling with respect to the Third Ground for Relief largely moots the other Grounds for Relief asserted in the Petition, the Court will briefly discuss those additional Grounds, simply for the sake of completeness.

### B. First and Second Grounds for Relief

In his First Ground for Relief, Baltimore argues that his Fifth and Sixth Amendment rights were violated because he was convicted and sentenced on Count 5, the CCE charge, without the jury or the Court determining that he was "the principal administrator, organizer, or leader of the enterprise" under 21 U.S.C. § 848(b)(1). The Second Ground for Relief is related; Baltimore argues ineffective assistance of counsel in failing to bring this matter to the Court's attention.

As previously discussed, during the relevant time period, *Harris v. United States*, 536 U.S. 545 (2002), was the governing law. As such, this factual finding was a sentencing factor to be determined by the judge by a preponderance of the evidence. *Harris* was later overruled by *Alleyne v. United States*, 570 U.S. 99 (2013). As such, under current law, this factual finding would have to be submitted to the jury and be proven beyond a reasonable doubt. The Court

rejects Baltimore's argument that, as a matter of equity, *Alleyne* should be applied retroactively. The Sixth Circuit has repeatedly held that *Alleyne* does not apply retroactively to cases on collateral review. *See In re Mazzio*, 756 F.3d 487, 490-91 (6th Cir. 2014); *United States v. Charles*, 901 F.3d 702, 705 (6th Cir. 2018).

The Government argues, and Magistrate Judge Merz found, that the First Ground for Relief is procedurally defaulted. Although *Alleyne* was not decided until after Baltimore had exhausted his direct appeal, Magistrate Judge Merz found that he could have argued for an extension of the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The Court, however, tends to agree with Baltimore that such an argument is not likely to have been successful, given the binding authority of *Harris.* Accordingly, rather than dismiss the First Ground for Relief on procedural default grounds, the Court will address the merits of the claim.

Paragraph 35 of Presentence Investigation Report states "in regard to Baltimore's activities relating to the drug conspiracy, he participated in the events of the conspiracy with at least five other persons and *occupied a position of principal organizer, supervisor and manager* with respect to these other individuals. He derived substantial income and resources from his drug activities and the evidence established he was responsible for distributing a quantity of cocaine in excess of 150 kilograms." (emphasis added).

At the sentencing hearing, the Court found as follows:

> The Offense Conduct is set forth in paragraphs 10 through 38 [of the PSR]. The Court will rely not on those Offense Conduct paragraphs as --- rather, the Court will rely upon its independent review of the evidence adduced at trial which it has concluded not only supports the four convictions but the enhancements, the enhancements by a preponderance or greater weight of the evidence --- the elements of the offenses by proof beyond a reasonable doubt.

Doc. #265, PageID#5793.

Baltimore correctly notes that the Court made no explicit finding that he was "the principal administrator, organizer, or leader of the enterprise." In hindsight, given the significance of this factual finding to the mandatory life sentence imposed on Count 5, the Court agrees it would have been preferable to explicitly make this finding on the record. Nevertheless, as Magistrate Judge Merz pointed out, the Court's statement is broad enough to encompass such a finding. This certainly reflects the Court's intention. Moreover, because of the overwhelming evidence that Baltimore was the principal administrator, organizer or leader of the enterprise, the Court's failure to articulate, with specificity, the reasons for applying this particular enhancement amounted to harmless error.

Accordingly, with respect to the First Ground for Relief, the Court OVERRULES IN PART and SUSTAINS IN PART Baltimore's Objections to the Magistrate Judge's Reports and Recommendations. Although the Court finds that this claim is not procedurally defaulted, it finds that the claim does fail on the merits.

Given that the First Ground for Relief fails on the merits, the Second Ground for Relief does also. Mr. Lehmkuhl's performance, in failing to object to

the Court's alleged failure to make the requisite factual finding that Baltimore was the principal administrator, organizer or leader of the enterprise, cannot be deemed constitutionally deficient.

For these reasons, the Court ADOPTS this particular portion of the Reports and Recommendations and DISMISSES WITH PREJUDICE the First and Second Grounds for Relief.

### C.   Fourth Ground for Relief

In his Fourth Ground for Relief, Baltimore argues ineffective assistance of trial counsel based on Mr. Lehmkuhl's failure to move to strike certain overt acts from Count 1 (incorporated into Count 5) and Count 4.  Baltimore maintains that, if these overt acts are excluded, the charges set forth in Counts 4 and 5 of the Indictment would be barred by the statute of limitations.  He further argues ineffective assistance of appellate counsel in failing to raise these arguments.

Magistrate Judge Merz found that the alleged failures did not constitute ineffective assistance of counsel.  He therefore recommended dismissal of the claim.  Baltimore did not object to this portion of the Report and Recommendations.  He has therefore waived any further right of appeal as to the Fourth Ground for Relief.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  Based on the reasoning and citations of authority set forth by Magistrate Judge Merz in his Report and Recommendations, Doc. #334, PageID##8491-95, the Court ADOPTS this portion of said judicial filing and DISMISSES the Fourth Ground for Relief WITH PREJUDICE.

30

**D.    Fifth Ground for Relief**

In his Fifth Ground for Relief, Baltimore alleges that the jury instructions on Count 3, for Possession of a Firearm in Furtherance of a Drug Trafficking Crime, were erroneous in that the jury was instructed on three possible theories of liability, but not all were applicable.

Magistrate Judge Merz found that this claim was procedurally defaulted. Again, Baltimore filed no Objections to this portion of the Report and Recommendations and, accordingly, has waived any further right of appeal as to the Fifth Ground for Relief.  For the reasons set forth by Magistrate Judge Merz in the Report and Recommendations, Doc. #334, PageID##8495-96, the Court ADOPTS this portion of said judicial filing and DISMISSES the Fifth Ground for Relief WITH PREJUDICE.

**E.    Sixth Ground for Relief**

The Sixth Ground for Relief is related to the Fifth Ground for Relief. Baltimore alleges ineffective assistance of trial counsel in failing to object to the jury instructions on Count 3.

The Court instructed the jury that the United States could establish criminal liability on Count 3 in three separate ways: (1) as a principal; (2) under the legal rule that all members of a conspiracy are responsible for acts committed by the other members, as long as those acts are committed to help advance the conspiracy (*Pinkerton* liability); and (3) as an aider and abettor.  Baltimore notes

31

that, because a general verdict form was used, it is unknown which theory or theories the jury found to be applicable in convicting him on Count 3.

Baltimore correctly points out that there is no evidence to support a finding that he was liable on Count 3 as a principal; he was, in fact, in Indianapolis, at the time that Tremaine Norman shot Rodney Harris in Dayton. With respect to Lehmkuhl's failure to object to the inclusion of this theory of liability, Magistrate Judge Merz properly found that Lehmkuhl could have made a strategic decision not to object. Because it would have been obvious to the jury that the Government could not prove this particular theory, the jury may have further believed that the Government's case, as a whole, was weak. Doc. #334, PageID##8502-03. Given the "highly deferential" standard for assessing counsel's performance, *Strickland*, 466 U.S. at 689, the Court finds that Baltimore has failed to establish deficient performance in failing to object to the inclusion of this theory of liability.

Baltimore also argues that *Pinkerton* liability does not apply and that, because Norman was never charged with a crime, Baltimore cannot be criminally liable for Norman's possession of the gun. In support, he cites to *United States v. Williams*, 894 F.2d 208 (6th Cir. 1990).

In *Williams,* four coconspirators—Williams, Blanton, Davis and Hoskins— were indicted on charges of Conspiracy to Distribute Cocaine, and Possession with Intent to Distribute Cocaine. Williams and Hoskins were also charged with Using and Carrying a Firearm in Relation to a Drug Trafficking Offense. As to

Hoskins, the jury was unable to reach a verdict and the judge declared a mistrial. The other three defendants were convicted on the conspiracy and drug trafficking charges, but Hoskins was acquitted on the firearms charge.  The judge applied the 2-level sentencing enhancement for possession of a firearm, USSG §2D1.1(b)(1), to the sentences of Blanton and Davis, who were not present when Williams committed the alleged firearm offense, but did not apply the 2-level sentencing enhancement to Williams.  The judge gave no explanation for why he had applied the enhancement to Blanton and Davis, but not to Williams.

The Sixth Circuit found that the district court had abused its discretion in applying the sentencing enhancement in an inconsistent manner.  Under the theory of *Pinkerton* liability, "the overt act of one partner in crime is attributable to all members of the conspiracy."  894 F.2d at 212.  "However, an overt act of one partner cannot be charged against other co-conspirators if it is not charged against the partner who allegedly committed the act, and the act of one partner cannot be charged against other co-conspirators in an inconsistent manner.  This would be inequitable."  *Id.*

Citing this passage from *Williams*, Baltimore argues that because Tremaine Norman was an unindicted member of the conspiracy, and was not indicted on charges of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, Baltimore cannot be held liable under a theory of *Pinkerton* liability.  In the Court's view, Magistrate Judge Merz properly rejected this interpretation of *Williams.* *Williams* deals with sentencing enhancements.  It says nothing about whether a

coconspirator can be convicted of possessing a firearm under 18 U.S.C. § 924(c) when the person who was the principal has not been charged with a crime. As Magistrate Judge Merz pointed out, there appears to be no authority to support the proposition "that there is an uncharged principal exception to *Pinkerton* liability." Doc. #334, PageID#8504.

Accordingly, the Court agrees with Magistrate Judge Merz that Baltimore has not proven that it was deficient performance for Mr. Lehmkuhl to fail to object to the inclusion of the *Pinkerton* theory of liability on the jury instructions concerning Count 3.

The Court therefore DISMISSES the Sixth Ground for Relief WITH PREJUDICE.


## IV.    Conclusion

For the reasons set forth above, the Court ADOPTS IN PART and REJECTS IN PART Magistrate Judge Merz's Report and Recommendations, Doc. #334, and Supplemental Report and Recommendations, Doc. #341. The Court SUSTAINS IN PART and OVERRULES IN PART Petitioner's Objections thereto, Docs. ##336, 343.

Petitioner Anthony Baltimore's First Amended Motion to Vacate Under 28 U.S.C. § 2255, Doc. #299, is SUSTAINED IN PART and OVERRULED IN PART. The Court DISMISSES WITH PREJUDICE the First, Second, Fourth, Fifth and Sixth Grounds for Relief. However, the Court SUSTAINS Baltimore's First Amended Motion to Vacate with respect to the Third Ground for Relief.

Within 45 days of the date of this Decision and Entry, the United States shall reoffer the 17-year plea deal that Baltimore rejected immediately prior to trial, conferring with defense counsel on an agreed-upon Statement of Facts to support guilty pleas on Counts 1, 3 and 4 of the Second Superseding Indictment.[4]

Date: April 27, 2020

/s/ Walter H. Rice (tp - per Judge Rice authorization after his review)
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[4]  To the extent that the United States elects to appeal this Decision and Entry, and Baltimore files a cross-appeal, the Court would grant a certificate of appealability and leave to appeal *in forma pauperis* only with respect to findings made in connection with the Third Ground for Relief.  No certificate of appealability is warranted with respect to the other five Grounds for Relief asserted in the Petition, two of which have been abandoned (Fourth and Fifth Grounds).